CHARLES McCARTHY, Junior,

*vs.*

YORK COUNTY SAVINGS BANK.

Cumberland.    Opinion February 2, 1883.

*Water fixtures, liability of landlord for.*

When a bowl is set by the landlord in a tenant's room for his exclusive use, in which the apertures for the outflow of the water are not sufficient to carry off all the water delivered by the faucet if left open, and this defect and the tenant's negligence in using the bowl are together the cause of damage, the landlord is subject only to the liability of an owner, as distinguished from that of an occupant.

The liability of the landlord does not follow, from the fact that the building does not contain the latest and most improved system of water pipes. He does not insure against the negligence of his tenants, nor is he bound to construct his building so as to reduce the possibilities of damage from such negligence to an absolute minimum.

There is no rule of law which forbids the use of faucets adjusted so as to be readily shut to prevent the escape of water, or which holds it an actionable negligence to maintain one in any instance without an outflow for all the water that the open faucet can deliver at full pressure, or a tort to put a tenant, who is responsible for his own acts in the possession of such a fixture.

ON EXCEPTIONS from superior court.

An action of the case, for injury to a stock of goods by overflow of water from a bowl set in an upper story.

The writ was dated October 2, 1880, and the plea was the general issue.

The case was tried without a jury by the presiding justice, who found the following facts.

The defendant bank on the ninth day of July, 1880, was the owner of a block of stores on Middle street in the city of Portland, and the plaintiff occupied one of the stores as the tenant of the defendant.

Directly over this store was a room occupied by one Allen Fisk also a tenant of the defendant, for the manufacture and

bottling of bitters.    In this room a wash-bowl was set supplied
with Sebago water.    Sebago water was introduced into the
building by the defendant bank in July, 1878.    The faucet
through which the water flowed into the bowl was a screw faucet
without any self-acting stopcock.    The apertures in the bowl for
the outflow of the water were not of sufficient size to carry away
the water coming from the faucet with the pressure which ordi-
narily existed in the night time.    There was no metal pan under
the bowl for the purpose of catching the overflow and from
which by means of a gutter the water could be carried to a safe
place.

The defendant bank in the construction and repair of the
apparatus employed a plumber of good reputation for skill as a
workman, but another plumber of like reputation testified that
" there were not a great many faucets in that section of the city
that would not overflow the bowls."

The defendant bank after the plumbing had been done had no
knowledge of its insufficiency, nor did any one at any time under
its direction ever make investigation to ascertain whether or not
the apparatus was sufficient to carry away the water.

Fisk hired said room of the bank without any written lease,
paying his rent therefor monthly.    There had been no conversa-
tion about water between Fisk and any person representing the
bank from the time of the commencement of the tenancy until
after said ninth day of July.    Fisk found the water and appa-
ratus for its use in the room when he entered into possession and,
used them.    The Water Company never called upon him for
payment of water rate, nor did the bank ever specially demand
any compensation for the use of water and apparatus, but it was
admitted that the bank paid the Water Company for the water
used in this room.    The bowl had been used by Fisk during his
tenancy prior to said ninth day of July.    Two cork stoppers had
become lodged in the overflow pipe which were allowed to reach
there, through the negligence of Fisk or his servants.    But after
their removal, subsequent to said ninth day of July, the means for
the outflow of the water were not sufficient to carry it away as
it came from the faucet under the pressure hereinbefore referred

to. Late in the afternoon of July 9, 1880, the main pipe burst in the street, and the water was shut off from the defendant's block and other buildings in the vicinity.

In the evening of that day Fisk went to the faucet to obtain water and opened the same, but found no water on account of the shut off. Fisk claimed at the trial that he closed the faucet, but I find in view of all the circumstances that he negligently left the cock open. Sometime before morning the break in the main pipe was repaired, and the water let on. The water overflowed the bowl, flooded the plaintiff's store and injured his stock of goods.

"Upon these facts I rule as matter of law, as follows:

"*First.* That having introduced water into the block, it was the duty of the defendant, in the construction of the apparatus, to provide adequate means for the outflow of the same coming into the bowl through the open faucet under the pressure ordinarily existing in the night time.

"*Second.* That the defendant bank was negligent in the construction of the water apparatus.

"*Third.* That the negligence of the defendant in concurrence with the negligence of the tenant, Fisk, was the cause of the plaintiff's injury.

"*Fourth.* That the defendant is liable for the injury in this manner caused.

"After hearing the evidence and arguments of each party, and considering the same, I decide that said defendant is guilty in manner and form as said plaintiff has declared against it; and I award damages in the sum of six hundred eighty-three dollars and twenty-six cents."

To the foregoing rulings in matters of law, the defendant excepted.

*W. L. Putnam,* for the plaintiff.

In the case at bar, the water and water fixtures were not out of the control of the landlord. He furnished the water, paid the Water Company for it, put in the water fixtures; and was holden to keep them in repair during the tenancy, as he was

holden to keep in repair a common stairway, over which he retained control subject to use by all the various tenants.

In *Looney* v. *McLean*, 129 Mass. 33, the court says on page 35 : — " Where a portion of a building is let, and the tenant has rights of passageway over staircases and entries in common with the landlord and the other tenants, there is no such leasing as will exonerate the landlord from all responsibility for the safe condition of that portion of which he still retains control, and which he is bound to keep in repair; as to such portions he still retains the responsibilities of a general owner to all persons, including the tenants of his building."

We claim to bring ourselves within the principle stated in the closing paragraph of the foregoing extract. As we place our case, we are content with the law in *Mellen* v. *Morrill*, 126 Mass. 545, and *Leonard* v. *Storer*, 115 Mass. 86 ; but claim the benefit of the rules laid down in *Looney* v. *McLean*, ante ; *Readman* v. *Conway*, 126 Mass. 374 ; *Priest* v. *Nichols*, 116 Mass. 401 ; *Shipley* v. *Fifty Associates*, 101 Mass. 251, and *Toole* v. *Beckett*, 67 Maine, 544, in all which the rule of the last paragraph of the above quotation from *Looney* v. *McLean* was applied.

We make no claim against defendant because it was landlord. We prove the fact that it was landlord in connection with other facts ; because altogether they show what defendant assumed to do. We claim against defendant upon the same principle, and upon none other, upon which we would claim against the Water Company for negligence, if the Water Company, instead of defendant, had contracted with Fisk, not only to furnish water, but as incident thereto, to furnish and maintain suitable pipes and bowls, precisely upon the same principle which held a gas company liable for damage through insufficient service pipe,— the gas company having contracted to furnish not only gas but service pipe, as we shall see from *Burrows* v. *The March Gas and Coke Company*, 7 Exchequer, (Law Rep.) 96.

In the leading cases cited by defendant, there were no such allegations in the pleadings, nor such facts relied upon, as in the

case at bar; but an effort was made in each case to raise a liability out of the relation of landlord and tenant.

We claim that the decision of the court below can be sustained, upon either of two distinct principles. The first is that stated by the court in *Marshall* v. *Cohen*, 44 Georgia, 489 (9 American Reports, 170). *Treadwell* v. *Davis*, 39 Ga.; *Bower* v. *Peate*, Queen's Bench, Div. vol. 1, p. 321.

But there is another principle upon which we can more safely rest this suit. There is a great class of cases in which the intervention of the action, negligent or wilful, of some third person, would not relieve a negligent defendant from responsibility for injury, which, nevertheless, would not have followed without such intervention. *Kimmel* v. *Bamfeind, ante,* is one of that class of cases.

One of the most noticeable is *Burrows* v. *The March Gas and Coke Co.* already cited; which first appears in Law Reports, 5 Ex. p. 67, and afterwards in Law Reports, 7 Ex. p. 96. This case is of great authority. The verdict was rendered under direction of Chief Justice Cockburn, was next affirmed by all the barons of the exchequer, and unanimously re-affirmed in exchequer chamber by Cockburn, Willes, Blackburn, Mellen, Brett and Grove. *Bartlett* v. *Boston Gas Light Co.* 117 Mass. 533; *Kimmel* v. *Burfeind,* 2 Daly, 155; *Lane* v. *Atlantic Works,* 107 Mass. 104; *Carter* v. *Towne,* 98 Mass. 567; *Dixon* v. *Bell,* 5 M. and G. 198; *McMahon* v. *Henning,* 3 Fed. Rep. 353; *Bigelow* v. *Reed,* 51 Maine, 332; *Illidge* v. *Goodwin,* 5 Car. and P. 190; *Clark* v. *Chambers,* 3 Q. B. Div. 327.

The immediate cause of an injury is not necessarily in the eyes of the law the proximate one. *Harris* v. *Mobbs,* 3 Exch. Div. pp. 274-5; *Lane* v. *Atlantic Works,* 111 Mass. 139; *Cayzer* v. *Taylor,* 10 Gray, 274; Whart. on Neg. § 145.

Our positions therefore are:

1. That as defendant was itself supplying the water to the building, it was guilty of present negligence in not having the fixtures incident thereto in safe condition.

2. That by reason of its negligence when the overflow came, the overflow damaged plaintiff; and defendant is not excused by reason of Fisk's negligence, which negligence was of precisely that character which defendant should have expected as a common and frequent incident of the use of water, and which the suitable outflow or safety pan would have provided against, just as the safety valve in the Massachusetts case would have provided against the negligence of the engineer.

*Wilbur F. Lunt*, for the defendants, cited:

*Mettlestadt* v. *The Ninth Av. R. R. Co.* 4 Rob. 377; *Reichenbacker* v. *Pahmeyer*, Chicago Leg. News, July 16, 1881, p. 365; *Pickard* v. *Collins*, 23 Barb. 444; *The Rheola*, Fed. Rep. July 19, 1881, p. 783; *Anderson* v. *Kryter*, 9 Cent. Law J. 385; *Robbins* v. *Monnt*, 4 Rob. (N. Y.) 553; *Kay* v. *Pennsylvania R. Co.* 65 Penn. St. 269; *Blyth* v. *Birmingham Water Works*, 11 Exch. 781; *McGrew* v. *Stone*, 53 Penn. St. 436; Sher. and Red. on Neg. § 13, *Smith* v. *First Nat. Bank*, 99 Mass. 605; *Cotton* v. *Wood*, 8 C. B. (N. S.) 568; *Toomey* v. *Brighton, &c. R. Co.* 3 Id. 146; *Losee* v. *Buchannan*, 51 N. Y. 493; *Spencer* v. *Campbell*, 9 Watts and S. 32; *Moore* v. *Goedel*, 34 N. Y. 527; *Looney* v. *McLean*, Mass. Law Rep. June 10, 1880; *Stewart* v. *Putnam*, 127 Mass. 407; *Carstairs* v. *Taylor*, L. R. 6 Exch. 217; *Box* v. *Jubb*, 41 N. S. Law Times, 97.

SYMONDS, J.   In the consideration of this case we shall assume, without deciding, that the relation of landlord and tenant between the plaintiff and the defendants has no effect to limit the right of action, that the restrictions upon the liability of lessors to lessees in such a case do not apply, that as to the water fixtures, their construction and condition, the defendants were subject towards the plaintiff to the ordinary responsibilities of a general owner of property in the possession of tenants to third persons alleging injury through its faulty or defective construction, ruinous condition, or by reason of a nuisance upon the premises at the date of the demise.   The case will not bear a statement more strongly in favor of the plaintiff than this.

The occupancy by the tenant, Fiske, of the upper room in which the bowl was set is one of the facts stated in the findings. There is nothing to indicate that his control of the faucet which he negligently left open over night, thereby causing the damage alleged, was not as exclusive of any rightful exercise of authority by the landlord in regard to its use, as was his possession of any part of the leased premises. The bowl supplied with water was in the room when Fiske began his tenancy under the defendants. He used it and paid the rent. He was tenant of the bank as to the bowl and its appurtenances, as of the other parts of the room, and with such rights of possession and control as pertained to the tenancy. These fixtures were leased to him and as lessee he was the actual occupant of them.

They were not like roofs of buildings let to several tenants, nor like passageways, entries and staircases used in common by different lessees, in regard to which under some circumstances, it is held, the liability for failure to exercise reasonable care to keep them safe remains upon the landlord, because they do not pass from his control into the exclusive possession of either tenant. This distinction is a radical one and important to be observed, for it removes from further consideration a whole class of cases cited by the learned counsel for the plaintiff as the very basis of his claim. The damages here resulted from the tenant's use of a thing of which at the time, as tenant, he had full control. It would not be according to the fact to base the landlord's liability upon the ground that he retained the present possession of the faucet and bowl which are alleged to have been of improper construction by reason of the insufficiency of the apertures in the bowl to discharge the water delivered by the open faucet. These were let to the tenant as much as the floor of the room. The liability of the landlord, if it exists, must rest upon other grounds than that of occupancy, must lie further back than that.

That water was introduced into the building by the bank, that they caused the pipes to be laid and maintained and paid the

water-rates, are not facts which tend to show their direct and present contol of faucets within the rooms of their tenants. They may enter, if necessary, to change or repair the pipes, but while the room with its fixtures is in the possession of a tenant, it is he who sustains to third persons the liability of an occupant, as the landlord sustains that of owner.

It will be seen that we are not at present considering the measure of liability attaching to the bank for defects in the construction or condition of the water pipes generally throughout the building. It is not our purpose at this point to deny their liability in any respect, but only to limit it by excluding, as not pertinent to the facts of this case, one ground on which it is urged in argument, namely, the ground that the landlord, notwithstanding the tenancy, remained in the immediate possession of the water-fixtures in the room occupied by the tenant, which were let to the tenant for his use. When such a defect as is here alleged in the bowl set in the tenant's room for his exclusive use, and his negligence in using it, are together the causes of damage, it would be false to charge the landlord with the liability of an occupant as distinguished from that of an owner.

The question, then, reduced to terms as favorable to the plaintiff as the case will permit is this, was the construction of the water-fixtures, in the possession of a tenant, such as to render the landlord liable to occupants below for damages resulting to their property from the tenant's use of the fixtures, leaving the faucet open and letting the water overflow; such use of the fixtures being negligent in reference to the manner in which they were constructed, and the damage which followed not being the necessary or ordinary result of their use in the way in which they were designed to be used.

The fault with which the landlord is charged is stated to be that "the apertures in the bowl for the outflow of the water were not of sufficient size to carry away the water coming from the faucet with the pressure which ordinarily existed in the night-time. There was no metal pan under the bowl for the purpose of catching the overflow and from which by means of a gutter the water could be carried to a safe place."

Can the rulings which follow these findings of fact, that having introduced water into the building it was the duty of the defendants to provide adequate means for the outflow of all that the open faucet would send into the bowl under the usual heavy pressure at night; that the omission of this duty was negligence; that when this negligence concurred with that of the tenant in leaving the faucet open and thereby damage resulted to the plaintiff the defendants as matter of law were liable, be sustained? Is here a state of facts from which negligence and liability are the legal conclusion?

To state a stronger case, if the landlord of an upper tenement should cause a faucet of proper construction and capable of safe use with due care, but without any outflow at all, to be put in for the purpose only of drawing water, would it be a conclusion of law from that fact, without other evidence, that the landlord was negligent and liable for the damages resulting from his tenants carelessly leaving the faucet open?

We do not now refer to the intervening act of the tenant as precluding recovery against the landlord. We disregard, for the present, the distinction between remote cause and proximate cause, and confine ourselves strictly to the question whether in such case the law holds the landlord guilty of a wrong for putting his tenant in possession of such an appliance. The inquiry is, whether there is a rule of law which forbids the use of faucets intended to be closed and adjusted so as to be readily shut to prevent the escape of water; or which holds it an actionable negligence to maintain one in any instance without an outflow for all the water that the open faucet can deliver at full pressure, or a tort to put a tenant who is responsible for his own acts in the possession of such a fixture.

We think there is no such rule of law, and that legal liability for negligence does not result from the findings of fact in this case.

Nothing unusual in the construction of the fixtures is shown. The testimony appears to have been that most of the faucets in that part of the city would overflow the bowls, if left open during the heavy pressure at night. The tenant was familiar with this

faucet from frequent use. There was nothing concealed from him, no danger which he could not readily anticipate and guard against by such care as was proper to be exercised, by anybody who used it. It was not intended to be open, but closed, when not in use. It is found that the tenant's act in leaving it open was a negligent one. There was no reason for him to suppose it was safe to do that, nothing to induce him to believe that the outflow would carry away all the water that the open faucet would deliver at night. No harm would result to anybody from the use of it with reasonable care in the manner in which the tenant knew it was designed to be used. It was under his control. When damage resulted from the tenant's negligent use of such an appliance as that, what fault was there except in the tenant himself? *Simonton* v. *Loring*, 68 Maine, 164.

The liability of the landlord does not follow from the fact that the building does not contain the latest and most improved system of water-pipes. He does not insure against the negligence of his tenants, nor is he bound to construct his building so as to reduce the possibilities of damage from such negligence to an absolute minimum.

In *Fish* v. *Dodge*, 4 Denio, 317, it is said, "one who demises his property for the purpose of having it used in such a way as must prove offensive to others may himself be treated as the author of the mischief." But when the letting is for a lawful purpose which can create a nuisance only under special circumstances, "he cannot be justly charged with the wrong which was actually committed by others who were not in his employment, unless he knew or had reason to believe that he was letting the property for a use which must prove injurious to the plaintiff."

In the opinion of the court in *Pickard* v. *Collins*, 23 Barb. 460, it is said, "the instruction that if the barn was built to be used in a certain way and was let to a tenant who in fact used it in that way and such use proved noxious or injurious to the plaintiff, the defendant is responsible for the injury, I think required some modification. If the use in that way would necessarily, under ordinary circumstances, be a nuisance, the proposition is correct."

"While the lessor of premises who leases them when they are already a nuisance, and receives rent, is liable for damages to a

stranger happening therefrom, whether the owner be in possession or not, a lessor of premises not *per se* a nuisance, but which become so only by the manner in which they are used by the lessee, is not liable therefor." *Ditchett* v. *Railroad Company,* 68 N. Y. 427.

In *Gandy* v. *Jubber*, 5 B. and S. 78, it is said by CROMPTON J., "to bring liability home to the owner, the nuisance must be one which is in its very essence and nature a nuisance at the time of the letting, and not merely something which is capable of being thereafter rendered a nuisance by the tenant;" by BLACKBURN J., "it must be shown that there has been a demise of land, with the nuisance existing upon it; and the nuisance must be, if I may so term it, a normal one; not such for instance as a cellar with a flap which may be or not a nuisance, according as it is carefully closed or improperly left open."

The result of authority is stated in Taylor's Land. and Ten. § 175, to be that to render the landlord liable, "the nuisance must be one that necessarily arises from the tenant's ordinary use of the premises for the purposes for which they were let, and not to be avoided by reasonable care on the tenant's part." See, also, § 175 a. n. 6, where *Marshall* v. *Cohen*, 44 Ga. 489, one of the principal cases cited for the plaintiff, is said to have turned upon a requirement of statute. *Rich* v. *Basterfield*, 4 Man. Gran. and Scott, 783, 804; *Carstairs* v. *Taylor*, L. R. 6 Exch. 217; *Ross* v. *Fedden*, L. R. 7 Q. B. C. 661; *Lowell* v. *Spaulding*, 4 Cush. 277; *Saltonstall* v. *Banker*, 8 Gray, 197; *Murray* v. *Richards*, 1 Allen, 414; *Mellen* v. *Morrill*, 126 Mass. 545; *Stewart* v. *Putnam*, 127 Mass. 403.

The authorities upon this point are numerous and have been elaborately cited in the arguments. Under them, we think it must be held that the statement of this case does not sustain the ruling that the defendants are liable as matter of law, and does not contain the evidence upon which negligence on their part could legally be found as matter of fact.

*Exceptions sustained.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and PETERS, JJ., concurred.