EDWARD C. ALLEN *vs.* JAMES H. SMITH and another.

Cumberland. Opinion July 30, 1884.

*Water-fixtures. Sinks. Water-closets. Nuisance.*

Properly constructed water-closets and other water-fixtures are not nuisances. Nor are landlords responsible for the carelessness of their tenants in the use of such fixtures.

ON REPORT from the superior court.

An action on the case against the owners of building No. 50, Union street, Portland, for damage done to the plaintiff's

goods and merchandise stored on the first floor of the building, April 22, 1881, by water escaping from the water-fixtures on the second floor occupied by Jury and Thompson, for the purpose of manufacturing shoes.

The writ was dated June 10, 1881. The plea was the general issue.

The opinion states the material facts.

*Strout and Holmes* and *E. P. Payson*, for the plaintiff.

We put the liability of defendants upon three grounds: (1) Negligence. (2) Nuisance. (3) Trespass.

We claim that the facts show the defendants to have undertaken to put the water-fixtures into a safe condition; to keep them there; and neglected to do either. They did not lease, as they undertook to do, safe fixtures. They did not restore them to, and maintain them in, a safe condition, as they undertook to do, — as indeed they not only undertook, but commenced to do. They knew the state they were in from the noisome, foul, obstructed water-closet, to the old, bent, clogged waste pipe, and the faucet that could not be closed, and they knew that these fixtures were the direct conductors of the water of Lake Sebago to the delicate goods of the plaintiff; and knowing all this they consented to the natural consequence — an overflow. If this be not negligence, bordering upon the culpable, we are at a loss to know what, in an action of tort, would be entitled to the term. We do not need to repeat the testimony here to establish this ground of their liability, which is abundantly supported by the following cases. *Burrows* v. *M. G. & C. Co.* L. R. 7 Ex. 96; *Toole* v. *Beckett*, 67 Maine, 544.

We had no more control of the pipes in Jury and Thompson's room, than had plaintiff of the roof in this last case. *Priest* v. *Nichols*, 116 Mass. 401 and cases.

We do not deny that the fixtures were let to tenant; but unlike the landlord in *McCarthy* v. *Savings Bank*, 74 Maine, 321, this landlord let unsafe fixtures, assumed to keep them safe, and failed, or neglected to do so. *Payne* v. *Rogers*, 2 H. Black. 350; *Lowell* v. *Spaulding*, 4 Cush. p. 279; *Milford* v.

*Holbrook*, 9 Allen, p. 21 ; *Freidenburg* v. *Jones*, 63 Ga. 612.

Nuisance. There is no doubt that equity would have enjoined the use of Sebago with such fixtures, had plaintiff known, and shown to a court, the facts as they existed. Story, Equity, § § 927, 928. As it did the storing of gunpowder. *Crowder* v. *Tinkler*, 19 Ves. 617 ; and the storing of merchandise in an unsafe building. *Mayor, etc. of London* v. *Bolt*, 5 Ves. 129.

Plaintiff did not know of the facts ; but if he could have claimed an injunction against such a source of damage *in futuro*, can he not now be remunerated in this action? These water pipes were, if not an existing, at least a potential nuisance ; and the landlord who leases such a nuisance is liable for its results. *House* v. *Metcalf*, 27 Conn. p. 640 ; Wood, Nuisance, pp. 6, 102 ; Bacon's Abridg. vol. 7, p. 232 and cases ; *Anonymous*, 11 Mod. 8 ; *Rooth* v. *Wilson*, 1 B. & A. 59 ; *Gilbert* v. *Beach*, 4 Duer, 423 ; *Fish* v. *Dodge*, 4 Denio, 311 ; *Panton* v. *Holland*, 17 Johnson, 92 ; *Owings* v. *Jones*, 9 Md. 108 ; *Pickard* v. *Collins*, 23 Barbour, 444 ; *Brown* v. *Bussell*, Law Report, 3 Queen's Bench, 261 ; Taylor's Landlord and Tenant, § 175 and 175 A. ; *Shipley* v. *Fifty Associates*, 106 Massachusetts, 200 ; *Looney* v. *McLean*, 129 Mass. 33 ; *Homan* v. *Stanley*, 66 Penn. 464.

Our declaration is sufficient for this cause of action. *Norcross* v. *Thoms*, 51 Maine, 503.

Trespass. This word does not fully express our claim. We do not mean that defendants entered our premises, but that they brought a dangerous agency in an unsafe receptacle upon their own premises, for their own advantage, and failed to restrain it from escaping and injuring us in our premises. The general principle, for whose application we are contending, is thus stated.

" The person whose grass or corn is eaten down by the escaping cattle of his neighbor, or whose mine is flooded by the water from his neighbor's reservoir, or whose cellar is invaded by the filth of his neighbor's privy, or whose habitation is made unhealthy by the fumes and noisome vapors of his neighbor's alkali works, is damnified without any fault of his own ; and it

seems but reasonable and just that the neighbor who has brought something on his own property ( which was not naturally there ), harmless to others so long as it is confined to his own property, but which he knows will be mischievous if it gets on his neighbor's, should be obliged to make good the damage which ensues if he does not succeed in confining it to his own property. But for his act in bringing it there, no mischief could have occurred ; and it seems to be but just that he should, at his peril, keep it there, so that no mischief may accrue, or answer for the natural and anticipated consequences. And upon authority, this, we think, is established to be the law whether the thing so brought be beasts, or water, or filth, or stenches." Judgment of BLACKBURN, J., in *Fletcher* v. *Rylands*, L. R. 1 Ex. 265. The case went then to the House of Lords ; where Lord CAIRNS, the Lord Chancellor, after quoting the above, adds : " In that opinion I must say I entirely concur. " *Rylands* v. *Fletcher*, L. R. 3 E. & I. App. 330.

In this country it has been denied in New York ( unless there be negligence in the use or introduction of the agency ). *Losee* v. *Buchnam*, 51 N. Y. 476 ; criticised in New Hampshire, — the opinion erroneously ascribing it to unjust principles. *Brown* v. *Collins*, 53 N. H. 442 ; substantially followed in Massachusetts, in *Ball* v. *Nye*, 99 Mass. 582, and approved in *Shipley* v. *Fifty Associates*, 106 Mass. 198, as stated in *Gorham* v. *Gross*, 125 Mass. p. 238, by GRAY, C. J.

" The general rule of law " stated . . . in *Fletcher* v. *Rylands*, and approved by this court in *Shipley* v. *Fifty Associates*, is that "the person who, for his own purposes, brings on his land and collects and keeps there anything likely to do mischief, if it escapes, must keep it in at his peril ; and, if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape. " It has been thus remarked upon in this state, — " Whether the same principles will be applied by this court to similar circumstances we need not stop to inquire until such an occasion presents itself. " VIRGIN, J.; *Simonton* v. *Loring*, 68 Maine, p. 165.

Aside from its weight as a precedent merely, and the approval

of Massachusetts cases, there are the following reasons why its doctrine should be recognized in this state :

First. It is a right doctrine ; for a man should not be allowed. to purchase a gain for the price of another's injury, even if not technically liable as a trespasser.

Second. It is an ancient doctrine, for the precedents cited and' principles applied by BLACKBURN, J., are found in that older common law, which is as much the heritage of Maine as of' England, and recognized in many cases for analogous injuries.. For illustrative proof of this, see as to animals : *May* v. *Burdett,* 9 Ad. & El. 101 (58 E. C. L.) ; *Cox* v. *Burbridge,*. 13 C. B. (N. S.) 438 [106 E. C. L.] ; *Card* v. *Case,* 5 C. B. 622 (57 E. C. L.) ; U. S. Dig. vol. 1, p. 272, § 63. As to· dangerous instruments : *Townsend* v. *Wathen,* 9 East, 277. Cesspools : *Tenant* v. *Goldwin,* 1 Salk. 21, 360, and 2 Ld. Raymond, 1089. Reservoirs : *Wilson* v. *New Bedford,* 108· Mass. 261. Privies : *Ball* v. *Nye,* 99 Mass. 582. Odors from· a tomb : *Barnes* v. *Hathorn,* 54 Maine, 125. Vapors and stenches : *Bunford* v. *Turnley,* 3 B. & S. 61 (113 E. C. L.). Fire — until stat. 6 Ann C. 3, limited liability to negligence :· *Filliter* v. *Phippard,* 11 Ad. & E. N. S. *354 ; *Higgins* v. *Dewey,* 107 Mass. 494, and notwithstanding this limitation as to fire. Smoke from a furnace : *Rich* v. *Basterfield,* 2 C. & K. (61 E. C. L.), 259. Sparks from an engine : *Power* v. *Fall,* L. R. 5 Q. B. Div. 600. Also fall of material from building : *Jager* v. *Adams,* 123 Mass. 26. And snow slides : *Shipley* v. *Fifty Associates, ante* ; *Preston* v. *Drew,* 33 Maine, p. 562.

Third. Because it is the firmest ground upon which the decisions that a landlord who demises an actual or potential nuisance is liable for all damages therefrom, can be logically sustained. Taylor's Landlord & Tenant, § 175.

*William L. Putnam,* for the defendant.

WALTON, J. The plaintiff's goods being stored in the basement of a building on Union street in Portland, were damaged by the overflow of a water-closet in the room above. The waste

water from a sink was discharged through the water-closet, and, on the night of the accident, the water was left running in the sink, and the water-closet becoming clogged, the water in the bowl overflowed and run down into the room below and did the damage complained of. It is agreed that the amount of the damage was two hundred and fifty-one dollars. The question is whether the defendants, who were the owners, but not the occupants, of the building, are responsible for this injury. We think they are not.

Properly constructed water-closets and other water-fixtures are not nuisances. They are among the greatest of modern conveniences. They not only save labor and add to our comfort, but they promote health and cleanliness, and thus tend to prolong life. True, they are in some respects a source of danger. So are stoves and furnaces. But they are not on that account to be regarded as nuisances. Nor are landlords responsible for the carelessness of their tenants in the use of such fixtures. *McCarthy v. Savings Bank*, 74 Maine, 315, and cases there cited.

The evidence in this case satisfies us that the negligence, if any, which caused the plaintiff's damage, was not the negligence of the defendants, but the negligence of their tenants. The water-closet seems to have been a suitable one, and in good repair. The evidence shows that it frequently became clogged, and had to be cleared out. But that must have been on account of the improper use of it, and not on account of any defect in its construction. Complaint is made of the pipe which conducted the water from the sink to the water-closet. It is said that it was old and small, and had a "kink" in it, which rendered it liable to become stopped. This may be true. But it seems to have worked well enough on the night of the accident, for it conveyed all the water from the sink to the water-closet. This is proved by the fact that it was the water-closet and not the sink that overflowed. At least, the evidence leaves no doubt in our minds that such was the fact. Complaint is also made of the supply-faucet of the sink. It is said that it had become leaky and could not be shut off tight. Of this there seems to be no doubt. The second story of the building was used as a shoe-shop, and this

sink and water-closet were in the second story, and used by the workmen. Mr. Jury, a member of the firm who occupied the shop, says he was the last one to leave the shop the night before the overflow ; that when he left there was a little stream running from the faucet about half as big as a pipe stem ; that the diameter of the waste-pipe was about one inch ; that no overflow had ever taken place before that time, although "this little stream" had been running several nights before this ; that when he got there in the morning there was water on the floor, the sink was half full of water, and the water-closet bowl was full, and water was running from the faucet in the sink, as near as he could judge, a stream half as big as a pipe-stem. Being asked how the water happened to overflow that night when it had never overflowed before, he answered, "I think the water-closet that night, by some means or other, got stopped, so the water could not run through at all, and the consequence was it run over from the bowl." And no other or different explanation of the accident is given by any one. Here then, we have the cause of the accident. It did not occur because the four-inch soil pipe of the water-closet, and the one-inch pipe of the sink, were not large enough to carry off a stream of water half as large as a pipe stem, or one twice that size ; nor because such a stream of water was left running into the sink, and could not be shut off closer. Such streams of water, as the evidence shows, are often left running purposely to prevent freezing. The direct proximate cause of the accident was the stoppage of the outlet of the water-closet, so, as Mr. Jury expressed it, "the water couldn't run through at all, and the consequence was it run over the bowl." The cause of this stoppage is not explained. An explanation is not difficult, however, when we consider the purpose for which this floor of the building was being used, and the number of persons that had access to the closet, and the kind and quantity of waste that would be likely to be thrown into it. It is enough to say that in our judgment it was not owing to any fault in the closet itself ; for that appears to have been one of the safest and best in use, and in good repair. The fault, if any, must have been in the

use made of it; and for that, the defendants were not responsible. The closet was not a nuisance *per se;* nor did it become so through any fault of the defendants.

*Judgment for defendants.*

PETERS, C. J., DANFORTH, VIRGIN and LIBBEY, JJ., concurred.