HUGH E. KENNY ET AL. v. CORNELIA S. BARNS.

*Negligence—Landlord and tenant—Repair—Overflowing of water-closet.*

Upon the facts in this case, the defendant is held not liable for damages sustained by the overflow of a properly constructed water-closet leased to a third party, and over which defendant had no control, which overflow was caused by the negligence or wanton act of some one in stopping up the waste-pipe, and leaving the valve open, and not by reason of the closet, or any of the pipes therein, being out of repair.

Error to Wayne. (Speed, J.) [Case tried before Chipman, J., in superior court of Detroit, and bill of exceptions settled by Speed, J., by virtue of the statute.] Argued October 7, 1887. Decided October 20, 1887.

Case. Plaintiffs bring error. Affirmed. The facts are stated in the opinion.

*George W. Radford,* for appellants.

*Moore & Canfield,* for defendant.

MORSE, J. The plaintiffs, as copartners under the firm name of Kenny, Adams & Co., leased the ground floor and basement of a building, owned by defendant, at 207 Woodward Avenue, Detroit. In this building they have carried on a retail dry-goods business since January, 1883.

The upper floors of the building were rented by the defendant to various tenants; William Livingstone, Jr., acting as her agent, having ample power to act for her in the leasing and management of the building.

On the second floor is a hall, which, at the time the cause of action in this suit arose, was leased to a secret society, known as the "Royal Templars." The rest of this story was divided

into offices, and rented to various persons. The third floor was leased to Kirchberg & Keenan, dealers in furniture.

On the second floor was a water-closet, which was leased with the hall, and taken care of and looked after by the janitor employed by the Royal Templars. It was also, by agreement, subject to the use of the employés of the furniture firm.

On the eighth day of April, 1886, by a stoppage of the waste-pipe, the closet overflowed, and the water soaked or dripped through the ceiling upon the goods of plaintiffs, damaging them.

They bring suit for this damage, alleging that it was the duty of the defendant to attend to said closet, and keep the same in good order, so that no damage might happen to the goods of plaintiffs, and that the damage was done by the neglect of the defendant to perform this duty, "by reason of the carelessness, negligence, and lack of attention" on the part of said defendant.

No fault in the original construction of the closet is averred in the declaration. On the contrary, it is alleged that the—

"Water-closet was so connected with the public sewerage system of the city of Detroit that when it was in good order the refuse and waste matter deposited therein passed off through the said public sewerage system."

The question of the defective construction of the closet is therefore out of the case.

The evidence on the part of the plaintiffs shows that about six months after they took possession of the premises there was an overflow from this same closet, doing some damage. They notified Livingstone of it, and he promised to have the matter attended to, and some plumbing was done by his direction. Seven or eight months after this first overflow there was another. Livingstone was again notified, and promised to remedy it. This was in the winter of 1883 and

1884. They made no further complaint about the closet to Livingstone until after the overflow upon which suit is brought. Nor does it appear that they had any cause of complaint.

It appears from the whole testimony, without any dispute, that the overflow was caused by an improper usage of the closet by some one not known. The closet, as found by the plumber on the morning of the overflow, was "stopped in what is called the trap or goose-neck with paper." The valve in the closet was out of order, so that the water ran all the time, and, the waste-pipe being stopped up, it ran out upon the floor. The valve was kept open by chips in back of it. When these were taken out, the valve closed. The chief obstruction to the waste-pipe was newspapers used in the closet. If medicated or "ordinary water-closet paper had been used, there would have been no danger of obstructions; the only danger comes from the abuse."

The janitor of the Royal Templars had a key to the closet. He was last inside of it on the night of the seventh of April. It was all right then. He locked it when he came away. On the night of the eighth he did not open the closet. His key opened the door at the outside into the main entrance to the hall. He carried the key with him all the time. The employés of the furniture store had access to this closet by a separate passage leading from the furniture rooms. When the door was open into the main hall to the building, there was nothing to prevent persons from the street entering, and using the closet.

The court below directed a verdict for the defendant.

It is not shown that the defendant, in the lease to plaintiffs, covenanted to keep this closet, or any part of the premises, in repair. Yet Livingstone, her agent, as shown by the testimony, did repair the closet whenever he was notified that any trouble with it existed.

But this overflow of water was not caused by the closet, or

any of the pipes therein, being out of repair. The whole difficulty, leaving out, as we must, the question whether the closet was properly constructed, arose from the negligence or wanton act of some one in stopping up the waste-pipe, and leaving the valve open.

Livingston, the agent, or Mrs. Barns, the principal, had no care over or custody of this closet, or any keys to the same. It was under the control of the Royal Templars, who employed a man to take care of it and keep it in order. No one else had access to it without their permission, excepting the furniture firm, who also had a key to it. The stoppage occurred in the night, after the store of plaintiffs was closed, and presumably late in the evening.

We do not see how the defendant can be made liable for these damages. Even if she were bound by the covenants of the lease to the plaintiffs to keep the premises in repair, of which there is no evidence, there was nothing out of repair of which defendant had any notice, or was bound to take notice. By a temporary filling up of the waste-pipe the damage was occasioned.

The defendant did not have the care of this closet; the duty of keeping it clean and in working order when in repair rested upon others. She or her agent did not know of this stoppage causing the leak, and the circumstances preclude any presumption of such knowledge, and, under the facts shown, she was not bound to know of this obstruction. It was not her duty to employ some one night and day to watch this closet. It would be unwarranted to find that she was guilty of negligence.

The judgment of the court below will be affirmed, with costs.

The other Justices concurred.