Henry Lederer et al., Plaintiffs in Error, v. Jared W. Fox et al., Defendants in Error.

### Gen. No. 14,656.

1. LANDLORD AND TENANT—*what not nuisance.* A landlord is not liable for injury to the property of a tenant caused by the overflow of water from premises occupied above by other tenants, such overflow resulting from a faucet which had not been provided with a waste or overflow pipe or other means for carrying off the water.

2. LANDLORD AND TENANT—*what not alterations.* Notwithstanding a provision in a lease prohibiting a tenant from "making alterations, amendments or additions to the building," such tenant has the right to place locks upon his premises.

BAKER, J., dissenting.

*Tort.* Error to the Municipal Court of Chicago; the Hon. WILLIAM N. COTTRELL, Judge, presiding. Heard in this court at the October term, 1908. Reversed and judgment here. Opinion filed November 8, 1909.

Statement by the Court. —This is a suit in which the plaintiffs seek to recover for loss alleged to have been caused by negligence of the defendants in permitting an overflow of water upon their premises which

ran down and damaged merchandise of the plaintiffs, consisting of wall paper, stored on a floor below.

There is a stipulation as to facts. Plaintiffs were tenants of the Vescosity Oil Company, which leased to them the front room on the second floor of the building known as 21 and 23 River street, Chicago. The wall paper conceded to have been damaged was stored in the room so leased. The said Oil Company had also leased to the defendants the fourth floor of said building, which was used by defendants for the storage of onions. Plaintiffs had no keys to said building and could obtain access to the premises leased to them only when the doors were unlocked by the lessor. There were other tenants in the building who—including the defendants —had keys to the front door. There was an elevator in the rear of the building which was accessible from each floor and was used in common by all tenants who so desired, each person so using the elevator operating it for himself. There were no locks upon the doors from the stairways leading to the floors, and no locks upon the doors leading to the defendants' premises, either from the elevator or from the stairway. These doors were not fastened, and any one in the building could enter the defendants' premises at will.

Upon these premises leased and occupied by the defendants there was a faucet connected with a water pipe running horizontally along the wall about six feet above the floor. This faucet was on the east wall of the building and about 20 feet from its front wall. Under it stood a barrel, which was partly filled with water when the defendants took possession of the premises. There was no waste pipe or overflow pipe or other means for carrying off water from either the faucet or the barrel beneath it. This was the condition when the defendants took possession under their lease, and no change seems to have been made in the building in this or other respects while the parties to this suit were tenants. Defendants' employes visited defendants' premises on the fourth floor from time to time. It is

stipulated that certain employes would testify that they never turned on the water from said faucet nor used water therefrom for any purpose. One of said employes testified that he was in the building Saturday morning, January 26, 1907, to look at the onions and see if they were frozen, and was again there about 4:30 p. m. of the same day for the purpose of placing thermometers there; that he left the premises about 4:45 p. m., that he did not touch the faucet while there and had never done so, and that no water was running therefrom when he left.

It appears that about 2:30 a. m. of the next day—January 27, 1907—water was discovered by the fire insurance patrol running out from the first floor of the building. Upon investigation a detective who was notified discovered that the faucet referred to within the premises occupied by the defendants was open and that water was running therefrom. He turned off the water and stopped the flow. The water from the faucet in question ran through from the fourth floor downward and caused the damage complained of to the plaintiffs' wall paper stored upon the plaintiffs' premises on the second floor of the building. It is agreed that the plaintiffs will testify that the fair market value of the paper so destroyed was $315.85. The court found in favor of the defendants and gave judgment accordingly. To reverse that judgment the plaintiffs prosecute this writ of error.

ISRAEL SHRIMSKI, for plaintiffs in error.

WELLS & KELLY, for defendants in error.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Objection is made in behalf of the plaintiffs to the admission in evidence of certain leases, and the admission of evidence tending to show that employes of the landlord and of other tenants visited the various floors

of the building. We deem it unnecessary to dwell upon these objections. The questions involved in this case have been fully considered in Chicago Telephone Co. v. Com. Union Assurance Co., 131 Ill. App. 248. In that case it was "insisted that a tenant is liable to third persons for damages resulting from the defective condition of the premises of which he has notice, or from his negligent use of them, regardless of the duty to repair as between tenant and landlord." The contention in the case before us is of like character. In that case we said (p. 252): "If a tenant is in exclusive control and occupation of a wash room in which an overflow occurs in consequence of the tenant's negligence or that of its employes having free access to such wash room, then it is not the landlord but the occupant of the premises who must be deemed responsible. Warren v. Kauffman, 2 Phila. 259." It is no doubt true in the case at bar that the absence of an overflow or waste pipe in connection with the faucet in question was a condition for which the landlord was responsible. But the damage in this case was caused primarily by negligently permitting water to run from the faucet and flood the plaintiffs' premises. This and not the absence of a waste pipe was the proximate cause of the damage.

We held in the case above cited that where the evidence tended to show the damage was caused by an overflow of water from a wash room exclusively occupied and controlled by the defendant, the law raises a presumption that the damage was due to the negligence of the defendant, and that the burden was on the defendant to show by a preponderance of the evidence that the injury was not due to such negligence. In the case at bar there is evidence tending to show that the water was not turned on by any of the employes of the defendants. But the undisputed evidence also shows that other persons in the building had unrestricted access to the defendants' premises and to the faucet from which the water flowed that caused the damage.

The premises where the faucet was situated were exclusively occupied and controlled by the defendants. There is no evidence tending to show how the faucet was opened, but under the circumstances the law raises a presumption that the defendants failed to exercise due care to prevent its use by its employes or others in such a way as to cause the damage complained of, and the burden of proof is upon the defendants to show by a preponderance of evidence that the damage was not due to such negligence. As in the case above cited, so here, the burden was we think upon defendants to disprove the inference of negligence arising from its control of the faucet and the opportunity of access to it afforded outsiders. It was the clear duty of the defendants so to control the use of their premises and appliances as to prevent injury to other tenants of the building from a negligent use of such premises and appliances.

It is argued in behalf of the defendants that the faucet without a drain pipe was a nuisance and that the premises having been leased with a nuisance upon them, by means of which the injury complained of was inflicted the owner or landlord, and not the defendants, is liable. We cannot agree with this contention. The faucet itself cannot be deemed to have been a nuisance. If properly used and guarded the faucet was not of itself objectionable. Whether a nuisance or not depended on the manner in which it was used.

Nor do we concur in the contention that the defendants could not place locks on its premises under the provisions of its lease without making "alterations, amendments or addition to the building," prohibited by the lease. If such contention could be deemed valid, the defendants nevertheless were under no obligation to become tenants and occupy premises in which they could not protect themselves, their premises and property by such ordinary precautions. They assumed control of the premises under the lease and assumed

therewith the obligations which such control and possession involved.

For the reasons indicated the judgment of the Municipal Court must be reversed and judgment will be entered here in favor of the plaintiffs for $313.85 agreed upon as the fair market value of the wall paper belonging to the plaintiffs stored on their premises and damaged.

*Reversed and judgment here.*

MR. JUSTICE BAKER dissenting. I am unable to concur in the finding and judgment in this case.

The floor of the building leased to and occupied by the defendants was used only for storage purposes. Into that room no person had a right to go without the permission of the defendants. There was no access to that floor from the street but only by means of an elevator and stairways leading from the lower floors of the building. The fact that the doors leading from the elevator and stairway to defendants' premises were not locked was not an implied invitation to any one to enter defendants' premises, and the person entering the same without the invitation or permission of defendants would be a trespasser.

Conceding that the burden of proof was on the defendants to rebut the inference of negligence arising from the fact that water ran from a faucet on their premises and found its way to the premises of the plaintiffs on a lower floor, and damaged their goods, I think such inference was rebutted in this case by the stipulation that, "the defendants and their employes who entered said premises will testify that they never turned on said faucet or used water therefrom for any purpose whatsoever at any time." Under this stipulation it cannot be held that the defendants or any of their employes were guilty of negligence in respect to the faucet. The finding of negligence by the majority of the court must therefore be based on the theory

that the failure of the defendants to keep the doors leading to their premises locked was a negligent use by them of their premises, which made them liable for the negligence of a stranger who may have entered said premises without their permission or invitation and turned on the water for purposes of his own. Conceding further that the defendants might have placed locks on the doors leading to their premises, and thereby have made entrance thereto by a trespasser more difficult, without violating the terms of their lease, I do not think that their failure to place locks on said doors and keep them locked, was a negligent use of their premises which made them liable to the plaintiffs for the wrongful act of a trespasser.