[No. 11597.   Department Two.   May 18, 1914.]

MARTINDALE CLOTHING COMPANY, *Respondent*, v. SPOKANE & EASTERN TRUST COMPANY, *Appellant*, T. H. GOWMAN. *Defendant*.[1].

LANDLORD AND TENANT—DAMAGES FROM FREEZING WATER PIPES—NEGLIGENCE—QUESTION FOR JURY.  The negligence of a landlord of a two-story building, the different floors of which were leased to separate tenants, in failing to prevent the pipes from freezing and flooding the lower story, is a question for the jury, where there was evidence that one cut-off for that purpose was so located as not to attract the attention of the upper tenant, in the exercise of reasonable care, and that the landlord did not point it out to him, so that the upper tenant was not guilty of negligence in failing to discover it and shut off the water.

SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.  A tenant in a lower story is not guilty of contributory negligence, as a matter of law, preventing a recovery for damages when pipes in the upper story were frozen and burst, flooding the lower premises, from the fact that, in the basement occupied by him, there was a cut-off to the pipe serving the second story which, if used, would stop the flow of water to the upper story; since the pipe was not under his control and he was not bound to anticipate the negligence of the upper tenant in not taking proper precautions to prevent the pipes from freezing.

SAME—INJURY TO TENANT'S GOODS—LEASE—EFFECT OF PROVISIONS.  A provision in a lease, compelling the tenant to make all "interior repairs," has no bearing on an action for damages against the landlord and an upper tenant for negligently allowing a water pipe to freeze and burst, flooding plaintiff's premises.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered March 15, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort.   Affirmed.

*David Herman* and *W. W. Zent*, for appellant.

*Voorhees & Canfield*, for respondent.

PARKER, J.—This action was commenced by the plaintiff to recover damages claimed to have resulted to it from the

Reported in 140 Pac. 909.

negligent maintenance by the defendants, Spokane & Eastern Trust Company and T. H. Gowman, its tenant, of a water pipe in the upper story of a building owned by the trust company, and negligently permitting the pipe to burst from freezing, thereby causing a large quantity of water to be precipitated upon the goods of the plaintiff in its store, occupying the ground floor of the building. A trial resulted in verdict and judgment in favor of the plaintiff and against the defendant trust company, and exonerating the defendant Gowman. The trust company has appealed.

The clothing company occupied the ground floor and basement of the building under a lease as a tenant of the trust company, while Gowman occupied the entire second floor of the building under a lease as tenant of the trust company. Both tenants had been in the occupancy of their respective leased premises for several years. These were entirely separate tenancies. In so far as the right of either tenant to go upon or interfere with the premises leased by the other, such right was no different than as if each occupied a separate building under their respective leases. The provisions of the leases do not call for any particular notice here, except possibly the following provision found in each of them:

"And the said party of the second part [the tenant] does covenant and agree with the said party of the first part, its successors and assigns, that the said party of the second part shall and will make all interior repairs to said rooms during the life of this lease and without any cost to the party of the first part."

The building is situated at 716, Riverside avenue, in Spokane, being on the northerly side of that avenue. It is but two stories high in addition to its basement. It is not supplied with heat other than such as the respective tenants supplied for themselves. The second floor was occupied by Gowman and wife with a photograph gallery and their living rooms, and also by a dentist who was a subtenant of Gowman. Water was supplied to the second floor through a

pipe which ran from the avenue into the basement and up through the clothing company's store on its westerly wall, some distance back from the avenue, passing into a toilet room on the second floor, situated near the middle of that floor on the westerly side of a hallway running north and south. In the basement, there was a cut-off in the pipe leading to the upper floor by which the water could be entirely shut off from that floor. From the toilet on the upper floor, a pipe ran under the floor of the hallway to a sink in the room on the east side of the hall. This room was included in Gowman's tenancy, though seemingly unoccupied, save possibly as a storeroom. The pipe leading to the sink in this room had a cut-off near the bowl in the toilet room. Whether reasonable inspection by Gowman under the circumstances would have disclosed to him the fact that this pipe carried water across the hall to the sink, and that the water could have been cut off therefrom by this cut-off, is one of the principal controverted questions touching both his and the trust company's negligence. The damage occurred from the bursting by freezing of this pipe at a point near the sink in this room, on the east side of the hall, during a very cold night in January, when such freezing and bursting of the pipe might have been anticipated with the water left in it, and might have been prevented by the use of the cut-off in the toilet room. Another pipe ran under the floor of the hall into the dental rooms at the front of the building. There was a cut-off in this pipe under the floor of the hall nearly opposite the sink in the room to the east of the hall. Gowman claims that he thought this cut-off could be used to stop the flow of water to the sink as well as to the dental rooms. This cut-off was accessible by raising a loose board left for that purpose over it in the floor of the hall.

During the evening of the night when the bursting of the pipe at the sink occurred, Gowman, deeming it a necessary precaution because of the intense cold, turned the cut-off in the hall floor to stop the flow of water, as he had often

done during previous cold spells. Gowman testified, in substance, that, when he went into possession of the upper floor under his lease, the cut-off in the floor of the hall was called to his attention by the agent of the trust company and that the agent then requested him "to see that this shut-off was shut off during cold weather, to prevent any freezing of the water in the dental rooms;" also, that other cut-offs in the upper floor were then called to his attention but the one in the toilet room was not then mentioned; though we may assume, for argument's sake, that Gowman knew it was there. He also testified, in substance, that there was nothing to indicate that the pipe supplying the sink in the room to the east of the hall came from the toilet room. Two experienced plumbers testified, in substance, that the cut-off in the toilet room was simply such as are usually installed in such places to enable repairs to be made to toilets and that there was nothing, so far as the outward appearance of the plumbing was concerned, to indicate that the pipe leading to the sink came from the toilet room or that the cut-off therein controlled the flow of water to the sink, but that from outward appearances, the cut-off under the hall floor seemed to be the one to check the flow of water to the sink, though, as demonstrated by the freezing and bursting of the pipe here involved, that was not the fact. The trial court submitted to the jury a special interrogatory, which it answered and returned with its verdict, as follows:

"Did the defendant Gowman, under all the circumstances of this case, at and immediately prior to the time of the alleged freezing and bursting of the water pipe, act as an ordinary prudent man would have acted relative to the water pipe? Ans. Yes."

The principal contention made by counsel for the trust company is that the trial court erred in refusing to dispose of the cause in its favor as a matter of law upon its motions for nonsuit, for instructed verdict, and for judgment nothwithstanding the verdict. It is argued that the trust

company was entitled to have the cause so disposed of, (1) because of failure of proof showing any negligence on the part of the trust company; and (2) because the evidence conclusively showed that whatever damage the clothing company suffered was the result of its own negligence. We will notice these in order.

Was there sufficient evidence to sustain the jury's conclusion that the trust company's negligence was the proximate cause of the damage? We ignore, for the present, the question of the clothing company's contributory negligence. Had the trust company been in the actual occupancy of the second floor as owner, instead of such occupancy being by its tenant Gowman, it seems to us there would be but little room for serious argument in defense of the trust company, in view of the well recognized necessity of taking precautions against the bursting of water pipes by freezing and the means readily at hand on that floor to exercise such precaution. The trust company actually knew of the cut-off in the floor of the hall, and in the absence of evidence showing to the contrary, we think the jury were warranted in believing that the trust company also knew that the cut-off in the toilet room would stop the flow of water to the sink; the placing of the pipe leading from the toilet to the sink in the store room being before Gowman's tenancy commenced, and done presumably at the instance of the trust company, the owner of the building. Now, if all this knowledge of the trust company, which we conclude the jury were warranted in believing it possessed, touching the means at hand for cutting off the water to prevent freezing, had been in possession of Gowman, counsel for the trust company might well argue that it was Gowman's negligence in not shutting off the water flowing to the sink which was the proximate cause of the damage. But it was the duty of the trust company, as owner of the building, to inform Gowman of the means provided by it to shut off the water flowing to the sink, either by specific directions, as it did relative to the cut-off in the

hall floor, and other cut-offs upon Gowman's leased premises, or by having the plumbing so constructed in its building as to render it apparent to Gowman upon reasonable inspection that the cut-off in the toilet room would stop the flow of water to the sink. In view of the apparent condition of the plumbing, indicating, as testified to by the plumbers, that the cut-off in the hall would stop the flow of water to the sink as well as the flow to the dental rooms, and the other circumstances the evidence tends to show, we think the jury was justified in making their special finding which, in effect, exonerated Gowman from all negligence in his failure to cut off the flow of water to the sink by the use of the cut-off in the toilet room, and that the negligence of the trust company induced Gowman to so act, and thus became, as we think the jury could rightfully conclude, the proximate cause of the damage. Among the decisions called to our notice dealing with the negligence of tenants on upper floors causing damages to those on lower floors, the following are of interest: *Lederer v. Fox*, 151 Ill. App. 300; *McCarthy v. York County Sav. Bank*, 74 Me. 315, 43 Am. Rep. 591; *Allen v. Smith*, 76 Me. 335; *Kenny v. Barns*, 67 Mich. 336, 34 N. W. 587; *Lebensburger v. Scofield*, 155 Fed. 85, 12 L. R. A. (N. S.) 1025, and note.

These decisions, however, turn upon the question of the negligence of the upper tenant, and are of but little aid here, in view of the jury's finding exonerating Gowman, the upper tenant, from negligence, which finding, we conclude, was justified by the evidence. The following decisions are of interest touching the question of a landlord's negligence in allowing water to escape in upper stories under his control, thereby causing damage to his tenant's goods occupying a lower story: *Priest v. Nichols*, 116 Mass. 401; *Freidenburg & Co. v. Jones*, 63 Ga. 612; and our own recent decision in *LeVette v. Hardman Estate*, 77 Wash. 320, 137 Pac. 454.

These decisions, however, cannot be said to be directly in point upon the exact question here involved, nor has any decision come to our notice which can be said to be exactly in point. We think, however, the logic of the decisions above noticed, relating to negligence of tenants and landlords controlling upper floors resulting in damage to tenants occupying lower floors, support the conclusion that the facts of this case warranted the jury in finding that the negligence of the trust company was the proximate cause of the injury here complained of in that such negligence resulted in Gowman's failure to shut off the water flowing in the pipe to the sink. Our attention has been called to *Buckley v. Cunningham,* 103 Ala. 449, 15 South. 826, 49 Am. St. 42. That decision, however, in so far as it may be regarded as applicable to this situation, is seemingly not in harmony with our views expressed in *Le Vette v. Hardman Estate, supra.*

Was the evidence such as to enable the court to determine, as a matter of law, that the clothing company's contributory negligence was the proximate cause of the damage suffered? We think not. It is true, there was, in the basement occupied by the clothing company, a cut-off which would, if used, have stopped the flow of water to the entire upper floor. The failure of the clothing company to stop this flow of water to the upper floor and thereby prevent freezing, by the use of this cut-off, is claimed to be the principal act of contributory negligence on its part. We have seen that the tenancies were entirely separate. It seems quite clear to us that the clothing company would have no more right to turn this cut-off and stop the flow of water to the upper floor than it would to go off its own leased premises and stop the flow of water to that floor. That pipe and the water flowing through it, while upon the clothing company's leased premises, was not for its use, and was no more a part of its leased premises than as if it had been, in fact, physically off such premises. The argument amounts in substance to this; that the clothing company did not anticipate the negligence of those who

were in control of, or responsible for, the taking of proper precaution to prevent the freezing and bursting of water pipes on the upper floor, which floor, we have noticed, was no part of the premises leased by the clothing company. While it may be contributory negligence under some circumstances not to anticipate fault in others, yet it cannot be said, as a matter of law, that it was so on the part of the clothing company under the circumstances here shown. Thompson, Negligence, §§ 190, 191. The clothing company had occupied the ground floor and basement of this building for a number of years. It had manifestly never had occasion to anticipate that proper precaution would not be taken by those in control of the upper floor to prevent freezing and bursting of the water pipes on that floor; though it is apparently conceded that, in the climate of Spokane, in a building such as this, without any other heat than such as the tenants themselves furnished, it was necessary, during the winter months, to take such precautions. We have had occasion to deal with the question of damages occurring upon leased premises as between the landlord and the tenant of the particular premises upon which the claimed negligence occurred, in *Howard v. Washington Water Power Co.*, 75 Wash. 255, 134 Pac. 927, and *Mesher v. Osborne*, 75 Wash. 439, 134 Pac. 1092. This, however, is not a case of the clothing company exercising the proper control and care over its own leased premises, but, so far as its contributory negligence is concerned, it becomes a question of its anticipating the negligence of others upon premises which it did not occupy.

Some contention is made rested upon the duty of these tenants, to wit, the clothing company and Gowman, to make "interior repairs" upon their respective leased premises as provided in their leases. We are unable, however, to see that this provision touches any duty of the clothing company as to needed repairs upon Gowman's premises, defective condition of plumbing therein, or negligence on the part of

Gowman or the trust company in failing to properly control the water on that floor, in view of the fact that the respective tenancies were entirely separate and independent of each other. We think what we have said disposes, in substance, of the numerous assignments of error made by counsel for the trust company, and that further discussion is not called for.

The judgment is affirmed.

FULLERTON, MORRIS, and MOUNT, JJ., concur.