PETZ *v.* VOIGT BREWERY CO.

1. LANDLORD AND TENANT—DUTY TO REPAIR.
   A landlord, in the absence of covenants on his part, is not
   required to repair, even when the premises become defective
   by reason of deterioration or decay.

2. SAME—LIABILITY FOR RENT.
   Rent is payable even when demised premises have become
   untenantable by inherent defect, provided they were habit-
   able at the time of the demise, and there was no fraud on the
   part of the landlord.

3. SAME—EVICTION.
   Where premises demised without any covenant by the land-
   lord to repair become unfit for occupancy while the tenant is
   in possession, and the landlord, with the tenant's consent,
   enters upon them for the purpose of making repairs, and com-
   pletes the same with reasonable promptness, the tenant, in
   the absence of an agreement to the contrary, is liable for
   rent during the time such repairs were being made, although
   he was excluded from the premises for such period.

Error to Wayne; Donovan, J.   Submitted January 6,
1898.   Decided March 29, 1898.

*Assumpsit* by Sophia Petz against the Voigt Brewery
Company, Limited, for rent.   From a judgment in her
favor for less than the amount claimed, plaintiff brings
error.   Reversed.

*Keena & Lightner*, for appellant.

*Wilkinson & Post*, for appellee.

LONG, J.   Plaintiff is the owner of the premises in
question.   Edward W. Voigt had been in the brewing
business in Detroit for many years, when, in 1889, he
organized the defendant corporation.   In September, 1882,
plaintiff leased the premises in question to Mr. Voigt per-
sonally, for the term of five years, "to be occupied for a

restaurant and dwelling." The lessee covenanted that, during that term, he would "keep the said premises, and every part thereof, in as good repair, and, at the expiration of the term, yield and deliver up the same in like condition, as when taken, reasonable use and wear thereof, and damage by the elements, excepted." There was the usual covenant for quiet possession on the part of the lessor, but there was no agreement by her to repair. On April 16, 1887, the parties to this lease executed a renewal lease for five years after the expiration of the first one; *i. e.*, until October 1, 1892. The covenants in this second lease were the same as those above quoted from the first one. February 12, 1891, this second lease having been surrendered for its unexpired term, a new lease was given to the defendant for a term of 10 years from May, 1891; and this lease (being the one upon which this action is based) contained the same clauses as the two prior leases, as quoted above. The rental during the time covered by these leases varied from $2,500 per annum during the first years to $4,000 during the final years. From the time the lessee took possession of the premises, in 1882, until the trial of the cause, in 1897, Mr. Voigt (either for himself personally, or on behalf of the defendant) had the sole and exclusive possession of the whole of said premises, except during three months in 1896, when plaintiff was engaged in making repairs. Mr. Voigt furnished them for the tenants, as he desired, from time to time; and they were taken by the defendant from Mr. Voigt, under the new lease, in precisely the same condition as he had occupied and left them. Mr. Voigt made many changes in the building during his occupancy under the three leases.

In August, 1896, plaintiff received notice, through her brother, Joseph Pulte, who managed her business affairs, from the building inspectors, that the side wall of the building was in an unsafe condition, due to its bulging out at the first and second floors, and that it must be repaired. None of the parties interested in the building had noticed this defect before this time. Mr. Pulte saw

Mr. Voigt, and some conferences followed between them, resulting finally in an interview between Mr. Voigt and Mr. Lightner, on behalf of plaintiff, which was followed by certain correspondence. Plaintiff offered to make the needed repairs to the wall, but refused to allow anything off the rental during the time the repairs were being made. The keys were handed by defendant to plaintiff's attorneys on August 27, 1896, to make the repairs. On September 2d, Mr. Voigt spoke of not intending to pay rent while plaintiff was engaged in making repairs. At once plaintiff's attorneys returned the keys to Mr. Voigt, with the positive declaration that the repairing would be undertaken by plaintiff only on the understanding that all the rent would be paid by defendant under the lease. Defendant thereupon, acknowledging receipt of this letter, returned the keys to plaintiff's attorneys, and told them to go ahead with the repairs, and inclosed check for the month's rent, which was then past due. The repairs were undertaken at once by plaintiff, and were done in a thorough manner, at an expense to plaintiff of about $2,500. The building was inspected by defendant's architect, and was accepted by him about December 1st, he receiving the keys on behalf of defendant. The building inspectors examined the building in December, and gave a certificate that it was in good condition. Defendant, by Mr. Voigt, took possession of the building, and entered upon extensive improvements, to fit it for a German restaurant. While at this work, his men found it necessary to support certain joists with a truss, and to put in supports. This was not in the part of the building which plaintiff had repaired. Defendant did not notify plaintiff of these defects, nor call upon her to repair them, but Mr. Voigt had them attended to himself, and he paid for these latter repairs. This action was brought by plaintiff to recover five months' rental, under the lease, from September, 1896, to January, 1897, which defendant has refused to pay, and interest thereon. The jury returned a verdict for plaintiff for two months' rent; and

the plaintiff, claiming that she is entitled to the five months' rental, asks this court to review the questions decided against her on the trial.

At the close of the testimony, the court submitted to the jury the following special questions:

" 1. Did the plaintiff take such control of the premises, to rebuild the wall and repair the building, as to exclude the defendant thereby from possession during the repairs?

" 2. Were the premises unfit to occupy during such rebuilding and repairs?

" 3. Were the defects that required curing by rebuilding the walls and under-piers made necessary by the uses or changes of the building during the time that these tenants had control?

" 4. Did the defendant, during its possession under this lease, remove any columns or partitions, and weaken the building, so as to cause the defects complained of that required repairs?"

Questions 1, 2, and 3 were answered by the jury in the affirmative, and question 4 in the negative, and verdict was rendered in favor of plaintiff for $685, which was for two months' rent.

Plaintiff contends:

(1) That she was not legally required to make the repairs, and that doing the work she did at defendant's request does not constitute an implied covenant that she would make the repairs, and is no excuse for refusal to pay the rent stipulated.

(2) That, admitting that plaintiff was bound to make the repairs, defendant must pay the rent stipulated in the lease, provided the repairs were made with reasonable speed and care, and that it is shown this was done.

(3) That the repairs were made necessary by the improper use of the building by Mr. Voigt under the former leases; and that the defendant knew, through its agent, Mr. Voigt, the condition of the building, and the defendant cannot hold plaintiff liable for the conduct of Mr. Voigt, of which it had full knowledge.

(4) That the repairs were made necessary by the improper use made of the premises by defendant under its lease, — that is, in using them for other than for restau-

rant and dwelling; and defendant must therefore pay rent.

(5) It being admitted that five months' rental under the lease was not paid, and there being no evidence to sustain any of the items of counterclaim given in defendant's bill of particulars, the verdict should have been directed for plaintiff for her entire claim.

(6) That defendant's measure of damages, if it were entitled to any set-off under the facts, was not the rental reserved in the lease, but the actual amount defendant was damaged by reason of the repairs being made.

(7) That the burden was upon the defendant to prove its counterclaim, and to show the amount of its damage.

(8) That, plaintiff having consented to make the repairs on condition that defendant would pay all the rent, by accepting this offer defendant estopped itself to refuse to pay the rent.

(9) Since defendant did not notify plaintiff of the defects claimed to have been discovered elsewhere in the building in January, 1897, evidence of these alleged defects and repairs made by defendant was irrelevant.

We think the most of these contentions are answered by the jury under the general charge of the court. The court charged the jury substantially, after submitting the four special questions:

" There is one other question, while I am upon the subject, I will speak of. It seems to be contended by counsel for the plaintiff, and as sharply denied by counsel for the defendant, that there was an agreement, just about the time they entered upon these repairs and the $300 was sent in for the August rent, whereby the brewing company should pay the rent, notwithstanding that they were to be out of the occupancy; and whether there was an agreement of that kind or not is a question for the jury. * * * Whether or not they came together, whether or not their minds met, or whether they agreed upon anything, you must gather from their dealings there together, and from their correspondence. * * * If you find that the building was unfit for occupancy at the time the plaintiff was notified to rebuild the northeast wall, and the defendant, without any fault on its part, was deprived of the peaceable use of said building, plaintiff cannot recover rent for the use of the building during the period it was in an untenantable condition."

In the verdict, none of the defendant's set-offs were allowed as such. The jury undoubtedly took the defendant's theory, that it was not liable for the rent of September, October, and November, the months during which the plaintiff was making the repairs, and during which time the defendant had no use of the building.

It appears from the testimony that in July, 1896, the board of building inspectors of Detroit inspected the building, and found it in a dangerous condition, and notified plaintiff's agent to "make safe the northeast corner, as this wall is bulged up to the second-story window, and is in bad shape;" that, in accordance with this notice, plaintiff, September 1, 1896, took possession of the building, to make the repairs, and found the wall in such bad condition that, instead of merely bracing it up, the entire easterly wall, for the height of two stories and 60 feet back, was taken out and rebuilt; that the westerly wall of the building had also sagged inwardly; that these repairs were going on until December 1st, when the defendant accepted it, and again commenced its occupancy. Testimony was also introduced by defendant tending to show that during these three months the building was untenantable. Defendant also claimed that it should not be liable for rent for December and January; but, as the jury found for plaintiff for those months, that question need not be discussed.

The only questions, then, remaining are:

1. Whether the court was in error in submitting to the jury the question whether the building was unfit for occupancy during September, October, and November, 1896, and instructing them that if they found it was, and the defendant was thereby deprived of its peaceable use, the plaintiff could not recover the rent during the time it was in an untenantable condition.

2. Whether the court was in error in submitting the question whether there was an agreement between the parties that, if the plaintiff undertook the repairs, the defendant would pay rent during the time the building was being repaired, and instructing them that, if they found such an agreement, the defendant would be liable for the rent for those months.

We think there was evidence in the case which war-
ranted this last charge, if such charge was at all import-
ant.   But, in view of the fact that defendant did not
introduce testimony tending to show an agreement upon
the part of plaintiff that it should not pay rent during
these months, we think the court in error in submitting
the first proposition.   The jury found, specially, that the
plaintiff took such control of the building to make these
repairs as to exclude the defendant from possession.   But
it is well settled that the landlord, in the absence of cove-
nants on his part, is not required to repair, even when the
premises become defective by reason of deterioration or
decay.   *Fisher* v. *Thirkell*, 21 Mich. 22 (4 Am. Rep.
422); *Gott* v. *Gandy*, 2 El. & Bl. 845.   Rent is payable
even when demised premises have become untenantable
by inherent defect, provided they were habitable at the
time of the demise, and there being no fraud on the part
of the landlord.   Wood, Landl. & Ten. § 382; 12 Am. &
Eng. Enc. Law, 722, and cases there cited.

In the present case it appeared that Mr. Voigt, defend-
ant's agent, had occupied these premises for many years
before the lease to defendant was made.   Mr. Voigt was
the agent of defendant, and made the arrangement for
the defendant's term.   If the premises were then out of
repair, he had as much knowledge of it as the plaintiff.
This lease was executed in February, 1891, and defendant
went into possession under it, and continued in until July,
1896, before the building inspectors of the city gave the
notice to repair to make the building safe.   It became out
of repair or became dangerous and unfit for occupancy
while the defendant was in.   There being no agreement
in the lease that the lessor should make repairs, the lessee
would be liable for rent even if the lessor did make them,
unless there was an agreement that rent should not con-
tinue during that time.   The court should have directed
verdict in favor of the plaintiff for the whole amount
claimed (that is, for the five months' rent), as there is no
pretense that the plaintiff agreed to relieve the defendant

from such payment. The defendant relies upon the untenantable condition of the premises, and its exclusion during the time repairs were being made, and not upon an express contract that it should not pay rent during this time. The case is not like *Leonard* v. *Armstrong*, 73 Mich. 577. There the unhealthy condition of the premises existed when the tenant entered. In the present case the jury found that the defects which required the rebuilding of the wall, etc., were made necessary by the uses and changes of the building during the time Mr. Voigt and the defendant had control. The defendant was represented solely by Mr. Voigt, who had the entire and complete control of the business, and made the arrangements under which defendant entered. Clearly, the entry of the plaintiff, with defendant's consent, to make these repairs, under these circumstances, was not an eviction from the premises, and the case does not fall within that class of cases cited by defendant's counsel.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.