LEBENSBURGER v. SCOFIELD et al.

(Circuit Court of Appeals, Sixth Circuit. July 18, 1907.)

No. 1,640.

1. LANDLORD AND TENANT—WANT OF REPAIRS—LANDLORD'S LIABILITY.

Where a lease of the upper floor of a building obligated the lessee to keep and return the premises in good repair, and the water-closet which subsequently overflowed and injured the goods of a tenant on the floor below was in ordinary repair at the time the upper floor was let, the lessor was not liable for the injuries so caused.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, § 657.]

2. SAME.

Plaintiff leased the two lower floors and basement of a building, belonging to S., for life, remainder to M. At the time of this lease, S. and M. had executed a mortgage on the entire property to secure S.'s debt to G.; S. having executed a conveyance of his life estate to M. to secure her guaranty to such debt, the conveyance providing that she should collect the rents, and apply the same, first, to the cost of collection; next, to repairs, taxes, and insurance; and, then, to the payment of such debt. *Held*, that the conveyance was a mortgage and ineffective to make M. liable as owner of the premises for injuries to S.'s goods caused by the overflow of a closet on the upper floor of the building rented to another tenant.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

H. L. Peeke and C. T. Johnson, for plaintiff in error.
H. E. King and G. D. Welles, for defendants in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. Action by tenant of two lower floors of a three-story building for damages resulting from a defective water-closet on the floor above, occupied by another tenant. There was judgment for the defendant.

The building, of which the leased premises were a part, was owned by Frank G. Scofield and Mary S. Moore; Scofield being owner of an estate for his life, and Mrs. Moore of the remainder. In this state of the title, Lebensburger became tenant, under a lease made April 1, 1899, for a term of five years, of the two lower floors and basement. This lease was between Frank G. Scofield and Mary S. Moore, describing herself as trustee, as parties of the first part, and Lebensburger, as the party of the second part. The rental was made payable to "Mary S. Moore, trustee, or J. L. Moore, agent for Mary S. Moore, until said F. G. Scofield's notes, secured by mortgage upon said premises, shall be fully paid and thereafter on notice to second party by Mary S. Moore, Trustee, or J. L. Moore, agent, said rental shall be payable to Frank G. Scofield."

The mortgage referred to was one made by Scofield and Mrs. Moore, upon both his and her estate, to secure Scofield's debt to one Henry Graefe, shown by 11 notes for $500 each; one falling due each December and June thereafter with a precipitation of maturity in case of default of payment of any of the said notes when due, or the taxes upon the property. It contained no power of sale, but was to become

void upon performance of the covenants for the payments of the notes. Contemporaneously with this mortgage and lease to Lebensburger, Frank G. Scofield executed to Mrs. Moore a conveyance of his interest in the same premises, which recites the mortgage to secure Graefe in the payment of the grantor's notes, and that this instrument is to save her harmless therefrom. It is further provided that she is to collect and apply the rents from the conveyed premises, first, to costs and expenses of collection; second, to repairs and taxes and insurance; and, then, in payment of the grantor's debt to Graefe. In September, 1899, Frank G. Scofield executed a lease of the third or top floor in said building to an unincorporated social club, called the "Peerless Club," for a term of five years. Mrs. Moore was not a party to this lease, and the rental was payable only to the lessor, Scofield, or his order. While these two leases to different tenants of the lower and upper floor were in force and the respective premises in the exclusive occupation and control of the respective lessees, a water-closet upon the third floor became inoperative, either through neglect to keep same in repair or through negligent use, and flooded the lower premises occupied by Lebensburger, damaging his stock of merchandise to the extent of about $10,000.

The jurisdiction of the court below to entertain the action against Mrs. Moore was sustained upon a former writ of error; the case being reported under style of Lebensburger v. Scofield et al., 139 Fed. 380, 71 C. C. A. 476. Though entitled there and now as an action against Scofield and another, Scofield never appeared and has never been served, either personally or constructively. The action is therefore against Mrs. Moore alone; the tenant of the upper or third floor, the Peerless Club, not being sued.

There was no evidence upon which a jury could reasonably find for the plaintiff. It was therefore not error to instruct for the defendant, Mrs. Moore.

1. Mrs. Moore made two defenses: First, that she was not the owner or lessor of either the lower or upper floors of the property; and, second, if she was, she was under no obligation to repair. In such circumstances, the owner is not liable to the tenant for repairs, nor to strangers who sustain injury through the occupier's neglect to maintain repairs. Felton v. City of Cincinnati, 95 Fed. 336, 37 C. C. A. 88; 24 Cyc. 1081; Petz v. Voight Brewery Co., 116 Mich. 418, 74 N. W. 651, 72 Am. St. Rep. 531. Although the occupier may be liable to a stranger who sustains an injury due to want of repairs, yet the owner, if bound to repair, may be sued in the first instance. This is to avoid circuity of action, as the occupier would have his remedy over against the owner upon his covenant. Payne v. Rogers, 2 H. Black. 350. But if the premises were in a dangerous condition when let for the purpose for which they were to be used, and this was known to the owner, he would be directly liable to a stranger if his injury was due to such condition. Stenberg v. Wilcox, 96 Tenn. 163, 33 S. W. 917, 34 L. R. A. 615; Swords v. Edgar, 59 N. Y. 28, 17 Am. Rep. 295; Wood on Landlord & Tenant, § 175; The King v. Pedly, 1 Ad. & E. 1, 822; and Ingwersen v. Rankin et al., 47 N. J. Law, 18, 54 Am. Rep. 109. But there is neither averment nor substan-

tial evidence that the plumbing on the upper floor was in a condition dangerous to the occupant of the lower floor when let out. This upper floor was unoccupied and therefore under the control of the owner at the time of the lease to Lebensburger in April, 1898, and so remained until September, 1899, when leased to the Peerless Club. That the owner would have been answerable to the occupier of the lower floor for any damage proximately due to defective plumbing upon the upper floor while in control of the owner must be conceded. Glickauf et al. v. Maurer, 75 Ill. 289, 20 Am. Rep. 238; Priest v. Nichols, 116 Mass. 401; Ingwersen v. Rankin et al., 47 N. J. Law, 18, 54 Am. Rep. 109. But this lease of the upper floor was not executed until September, 1899, and the flooding of the lower floor occurred July, 1902, and there was no material evidence showing that this water-closet was not in ordinary repair when the premises were let to the Peerless Club. That lease obligated the occupier to keep and return the premises in good repair. We do not overlook the fact that there was some evidence of comparatively unimportant troubles during the vacancy of the upper floor. But upon Lebensburger's complaint these were repaired. It was not until the spring after the third floor was let that any other repairs were found necessary. These were made by the then occupiers and were of an unimportant character. From time to time thereafter slight repairs were made by the club, but no condition developed beyond those incident to ordinary household plumbing. We can find in this transcript no such material evidence tending to show that this disaster was due to a dangerous condition of this plumbing, known to the owner, at the time of the letting of this third floor in September, 1899, as to make a case upon which a verdict could be founded upon the doctrine of the liability of an owner for the dangerous condition of premises when let out. Mrs. Moore, assuming her to be the owner, had no control of the premises let to the club from the date of their lease. The water-closet and toilet rooms were accessible only from the rooms occupied by the club and absolutely under their control. Being in reasonably good repair at the time of the lease, she would not be liable to the tenants of the lower floor for damages resulting from negligence of the tenant of the upper floor in failing to maintain the closet in repair or from negligent use. Having parted with the entire control, she is absolved from liability for defects originating under an occupier bound to do repairs. 24 Cyc. 1128, 1129; 2 Wood on Landlord & Tenant, §§ 175, 381; Haizlip v. Rosenberg, 63 Ark. 430, 39 S. W. 60; Freidenberg v. Jones, 63 Ga. 612; Ditchett v. Spuyten Duyvil, etc., Ry. Co., 67 N. Y. 425.

2. Neither could we sanction a judgment based upon the contention that Mrs. Moore was owner. Her estate was the remainder upon termination of the life estate in Scofield. The latter was alone entitled to the rents and profits during his life. The contention that she became owner by virtue of his conveyance to her of April 1, 1899, is not maintainable. That conveyance must be read with Scofield's mortgage of same date to Graefe and the contemporaneous lease to Lebensburger of part of the mortgaged premises. These instruments show that the one purpose was to protect her as his surety by a mortgage upon his individual estate and to empower her to receive and

apply the rents to come from Lebensburger in payment of the debt for which she was bound, after payment of such taxes, insurance, and repairs as he should authorize, etc. No default having occurred under any of the notes of Scofield's mortgage, Mrs. Moore had, under the law of Ohio, as mortgagee, no right to take possession of the premises and no right to the rents coming from Lebensburger, except such right as was given her by the instrument of mortgage. Kerr v. Lydecker, 51 Ohio St. 240, 248, 250, 37 N. E. 267, 23 L. R. A. 842; Allen v. Everly, 24 Ohio St. 97; Martin v. Alter, 42 Ohio St. 94. In Kerr v. Lydecker, Judge Burkett said of the legal title under a mortgage:

"The mortgage being, in equity, regarded as a mere security for the debt, the legal title to the mortgaged premises remains in the mortgagor as against all the world, except the mortgagee, and also as against him until condition broken; but after condition broken the legal title as between mortgagor and mortgagee is vested in the mortgagee."

The joinder with Scofield in the lease to Lebensburger was as trustee, and not as owner. Whatever effect this might have had by way of estoppel in making her liable under any covenants, express or implied, as trustee or individually, we need not consider. If we assume that she is estopped by that lease from denying that she was an owner or lessor, the estoppel would be limited to that part of the premises let to Lebensburger. She did not join Scofield in the lease of the third floor and is under no estoppel in relation to that. The result of this assumption would be that the relation of landlord and tenant might, by estoppel, exist between Mrs. Moore and Lebensburger as to the two lower floors; but, if she was not the owner or lessor or occupier of the third floor, she would not be liable for the condition of the plumbing on that floor, either when that floor was let out or subsequently.

Judgment affirmed.