(Decided March 26th, 1896).

---

# THE WESTERN MARYLAND RAILROAD COMPANY *vs.* GEORGE L. STOCKSDALE.

*Carriers of Passengers—Railroad Tickets—Expelling Passenger from Train—Wrong Ticket Given to Passenger by Mistake.*

A railroad ticket is not only a token that the passenger has paid his fare, but in many cases constitutes the contract between the passenger and the carrier.

When the question as to the right of a passenger to be carried arises between him and the conductor of the train, the ticket is the conclusive evidence of the nature and extent of the passenger's right.

If a ticket agent by mistake gives a wrong ticket to a passenger, the conductor of the train to whom it is presented may refuse to accept it and demand payment of the fare. In such case the remedy of the passenger is by an action against the carrier for breach of the contract. If he refuses to pay the fare and is ejected from the train he is not entitled to maintain an action of tort for such expulsion.

Plaintiff bought from the ticket agent of the defendant at W. an excursion ticket to G. and return at a reduced rate. Upon the face of the ticket it was stated that the return coupon would not be good unless stamped by the secretary of a camp-meeting at G. At that time the exercises of the camp were over and plaintiff was unable to find any one there to stamp his ticket. Upon his return he offered to the conductor the unstamped return coupon, which was refused and payment of the fare demanded. Plaintiff had in his pocket a mileage ticket over the road, but he refused to use it or to pay the fare and was put off the train. In an action to recover damages as for a wrongful expulsion from the train, *Held*, that since the ticket offered by the plaintiff was upon its face and to his knowledge invalid, the conductor was justified in compelling him to leave the train upon his refusal to pay the fare and that he was not entitled to recover in this action.

Appeal from a judgment of the Superior Court of Baltimore City. At the trial all of the defendant's prayers were rejected and the Court below (RITCHIE, J.) instructed the jury as follows :

1st. That if the jury shall find from the evidence in this case that the defendant company conducted a railroad carrying passengers between Glyndon and Westminster, and other points in August, 1893, and that the plaintiff, on Sunday, August 20th, 1893, purchased from the defendant company, at its office in Westminster, a round-trip ticket from Westminster to Glyndon, the return portion of which has been offered in evidence, and that the plaintiff used the going coupon of said ticket on said railroad in going to Glyndon on that day, and immediately upon his arrival at Glyndon went to the Temperance Camp Ground, near Glyndon (and referred to upon said ticket), and endeavored to find the secretary of said camp ground in order that he might have his said ticket stamped by said secretary, but that the secretary of said camp ground was not present at said camp ground, and had not been present since August

9th, 1893, and that the camp-meeting at said camp ground closed on August 9th, 1893, and that by the agreement between said defendant company and the officers of said Temperance Camp Ground, said officers of said camp ground only agreed to stamp at the said camp ground the return portions of any tickets of the defendant company until August 9th, 1893, if the jury shall find that the said camp-meeting on said camp ground closed on that day; and if the jury shall further find that said plaintiff, on the morning of August 21st, 1893, entered a regular train of the defendant at Glyndon for the purpose of being carried to Westminster, and presented to the conductor of said train the return portion of said ticket offered in evidence, and explained to said conductor that he could not get said ticket stamped by the secretary at said Temperance Camp Ground for the reason that said secretary was not present at said camp ground, and that thereupon said conductor refused to accept said ticket, and laid his hands upon said plaintiff and compelled said plaintiff to leave said train, that then their verdict must be for the plaintiff.

2nd. If the jury shall find for the plaintiff, under the plaintiff's first prayer, then, in estimating the damages, they should consider not only such inconvenience as may have been the immediate consequence of plaintiff's unlawful expulsion from the said train, but also such damages as may compensate the plaintiff for such unlawful interference with his person and for the indignity inflicted upon his feelings and character.

3rd. That if the jury find for the plaintiff under the first prayer, then the liability of defendant is not affected by the fact that the plaintiff had in his possession a 1,000-mile ticket or money with which he might have paid the fare demanded.

The jury returned a verdict for the plaintiff, assessing his damages at $300.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE and BOYD, JJ.

*William L. Marbury* and *J. Markham Marshall*, for the appellant.

The defendant's liability in an action for the breach of its implied contract to have an agent at the Temperance Camp to stamp the plaintiff's ticket, or for its mistake in issuing and selling the ticket under the then existing circumstances, is conceded, but the plaintiff could have resorted to either of these actions had he presented his thousand-mile ticket or peacefully paid his fare, and not sought to inflame his damages by forcing the conductor to eject him from the train.

The plaintiff's ticket contained on its face the terms of his contract with the defendant, and when presented to the conductor showed that the conditions of that contract had not been complied with. The regulations of the railroad company required the conductor, under such circumstances, to refuse to honor the ticket, to demand fare of the passenger, and upon his refusal to furnish it to eject him from the train. The right of a railroad company to enact and enforce such a regulation is well established as entirely reasonable and, in fact, essential to the proper management of its business. *B. & O. R. R. Co.* v. *Blocher*, 27 Md. 277; *McClure* v. *P. W. & B. R. R. Co.*, 34 Md. 532. It, therefore, becomes the question, whether the defendant's breach of its implied contract or mistake in issuing and selling the ticket, for which the plaintiff had a perfect remedy, absolved him from the duty imposed upon him by law to submit to the lawful regulations of the defendant, and whether the damages incurred in resisting by force the performance of the conductor's duty were not rather deliberately invited than attributable to the defendant's wrong. *Mosher* v. *St. Louis, etc., Railroad Co.*, 127 U. S. 390; *Townsend* v. *N. Y. Central R. R. Co.*, 56 N. Y. 295; *Griffin* v. *C. B. & Q. R. R. Co.*, 68 Ill. 499; *Frederick* v. *Marq., &c., R. R. Co.*, 37 Mich. 342; *Sheldon* v. *L. S., &c., R. R. Co.*, 29 Ohio St. 214; *Gordon* v. *Milwaukee, &c., R. R. Co.*, 54 Wis. 234; *Balto. & Ohio R. R. Co.* v. *Blocher*, 27 Md. 277.

The second contention embraced in the defendant's prayer is this : that the plaintiff having learned a whole day before he was ejected from the train, that some mistake had been made, and that he could not get his ticket stamped in consequence, and having full knowledge of the consequences that must overtake him if he presented his ticket unstamped, was bound to make every reasonable exertion and outlay within his power to escape, not merely the ten-mile walk to Westminster, but also to escape being ejected from the train. This principle is stated with great clearness in the case of *Frustenburg* v. *Fawsett*, 61 Md. 184. See also *Lawson* v. *Price*, 45 Md. 123 ; *Middlekauff* v. *Smith*, 1 Md. 329; *Loker* v. *Damon*, 17 Pick. 284.

*Harry M. Clabaugh, Attorney-General,* and *George R. Gaither, Jr.,* for the appellee.

There is only one exception in this case, and that arises upon the prayers offered at the trial. There was no prayer of the plaintiff asking for punitive damages, and, therefore, the only question for ajudication was whether or not the plaintiff, upon the facts as stated above, was entitled to recover. The plaintiff insists that the provision of the ticket requiring the stamp of the secretary of the camp-meeting association being a condition impossible of performance at the time of the issuance of the ticket was a nullity, and can have no effect upon his rights. It is conceded that the company's contract for stamping these tickets expired on August 9th, 1893, and that this agreement was made with, and therefore known by, the general passenger agent of the railroad company. Being known by one of the chief officials of the company, his knowledge was that of the company, and must be in law the knowledge of every official of the road. It should have been known by every conductor and ticket agent, and consequently they were bound in law to know that the condition was a nullity, and that the ticket was as if such a condition had not been inserted in it. That such is the effect of an impossible or unreason-

able condition is fully established by the authorities. " A passenger carrier has the right to impose limitations as to the time within which its tickets may be used, but in all cases such limitations must be reasonable or they will have no validity.   25 *American and English Encyclopædia of Law*, 1893.   "If a ticket is issued from A to B and return 'good for this day only,' and there is no train which leaves B on the return trip to A after the arrival of the train, the condition is unreasonable, and the holder will be entitled to a return passage to A on the first train leaving B for A on the next day.   2 *Good's Ry. Law*, 1403.

It is clear that the requirement, in the ticket issued by the company to the plaintiff was, under the circumstances of this case, absolutely impossible of performance, and, of course, therefore, unreasonable and void.   Moreover, the plaintiff was absolutely without fault ; he knew nothing of the impossibility of the condition at the time of the purchase of the ticket, and he did all in his power to have his ticket stamped.   This impossibility of performance he also explained to the conductor when he presented the ticket.   On the other hand, the expiration of the agreement under which the secretary of the camp ground was to stamp these tickets was known to the general passenger agent of the defendant, and it was clearly his negligence in allowing these tickets to be sold which placed the plaintiff in the position out of which this action arose.   The person to stamp the ticket, during the camp-meeting, was clearly the agent of the company for that purpose, and it was certainly the duty of the company to provide such agent, and its failure to do so was its own neglect.   That the plaintiff has been injured by the action of the company cannot be questioned. The only question to be considered is whether the conductor, when such a state of affairs exists, is bound to listen to the explanations of the passenger and act thereupon if true, or whether the passenger is bound to protect himself in every way in his power, and resort to an action for the breach of the contract.   It is readily admitted that there is

a diversity of opinion in the Courts of the several States upon this question, and the authorities relied upon by the appellant are simply those of certain jurisdictions in which the purchaser of such a ticket is relegated to his remedy upon the contract. On the other hand, in a large number of cases, the Courts have held that the conductor has no right to expel the passenger, and if he does so, the company is liable in damages therefor. In 25 *American and English Enc.* 1077, the text says : "The latter would seem to be the better doctrine ; it certainly has the support of the more recent cases." This book refers to a large number of authorities in support of this proposition, among them *P. W. & B. R. R.* v. *Rice*, 64 Md. 63, and as this case fully establishes this principle as the law of Maryland, it is submitted that this duty upon the defendant company is beyond dispute. See also *N. C. Ry. Co.* v. *O' Connor*, 76 Md. 207 ; *N. Y., &c., Co.* v. *Winters*, 143 U. S. 60.

BRISCOE, J., delivered the opinion of the Court.

This is an action of trespass to recover damages for the unlawful expulsion of the plaintiff from a train on the defendant's road. There is no dispute as to the material facts. On Sunday, August 20th, 1893, the plaintiff asked the ticket agent of the defendant company at Westminster, Maryland, for a round-trip ticket to Emory Grove Camp. The agent gave him a ticket to Glyndon and return, and called his attention to the fact that the Emory Grove tickets were not sold on Sundays, but that the Glyndon ticket would do as well, since the two stations were only a quarter of a mile apart. The plaintiff accepted the ticket. The return coupon reads as follows :

"Western Maryland Railroad Company. Temperance Camp-Meeting. Excursion Ticket. One Continuous Passage. Glyndon to Westminster. In consideration of the reduced rate at which this ticket is sold, it will not be received for passage after Friday, August 25th, 1893.

" This ticket will not be good for passage to or from in-

termediate stations, and will not be received for return passage unless stamped by the secretary of Temperance Camp-Meeting Association, at Temperance Camp Ground.    Not Good to Stop Off.    B. H. Griswold, Genl. Passenger Agent.

" To the Purchaser : Read the above contract, and take notice that the return part of this ticket must be stamped by the secretary of Temperance Camp-Meeting Association, at Temperance Camp Ground, before it will be honored for passage."

It appears from the evidence that the plaintiff went first to Glyndon for the purpose of having his ticket stamped by the secretary of the Temperance Camp-Meeting.    There he was informed that the Temperance Camp had closed on August 9th ; that the secretary had left the grounds, taking the stamp with him, and there was no one there authorized to stamp the return coupon.    There was an arrangement between the Temperance Camp at Glyndon and the Emory Grove Camp adjoining, that the exercises of the former should close on August 9th, and the exercises of the latter begin on the next day and continue until August 25th.    It further appears that the officers of the Temperance Camp at Glyndon had an agreement with the defendant company by which excursion tickets over the road were sold at a reduced rate, but their evidence was to the effect that they were under no obligation to provide for the stamping of return coupons after August 9th, when the meeting ended. The Emory Grove Camp had a similar contract for the sale of excursion tickets, but these tickets were not to be sold on Sundays.    The agent of the defendant at Westminster, who sold the plaintiff the ticket, did not know that the Temperance Camp was over, and it was in consequence of a mistake either by him or by the officials of the defendant company, or by the officers of the Temperance Camp as to the nature of the oral agreement for the sale of excursion tickets to Glyndon, that the plaintiff on the day in question received a ticket which required the return coupon to be stamped by the secretary of the Temperance Camp.    The plaintiff, after

his effort to have his ticket stamped, spent the day and night at Emory Grove, and on his return the next day to West-minster offered the return coupon and explained why it had not been stamped.   The conductor, however, refused to ac-cept the unstamped coupon and demanded the regular fare of forty cents.   The plaintiff at that time had in his pocket not only money sufficient to pay the fare, but also a thou-sand-mile ticket over the defendant road.   He insisted, however, upon his right to travel upon the return coupon, and upon his refusal to pay the fare the conductor com-pelled him to leave the train.   He was expelled from the train about ten miles from Westminster and walked the whole way to that place.   The judgment below being for the plaintiff, the defendant has appealed.

In the view we take of this case it will not be necessary for us to decide all the questions argued on the appeal.   If the plaintiff was not entitled to travel on the ticket so offered by him and refused to pay the fare when demanded, then his ejection from the train was lawful and no damages there-for can be recovered in an action of tort.   A railroad ticket is not only a token that the passenger has paid his fare and is entitled to passage, but it is also in many cases the con-tract between the passenger and the company.   In *Penning-ton* v. *P., W. & B. R. R. Co.*, 62 Md. 95, this Court held that when the ticket is sold for less than the usual rate upon the condition that it shall not be used after a limited time, then, if the passenger accepts and uses the ticket, he makes a contract with the company according to the terms stated.

In all cases when the question as to the right of a passen-ger to travel arises between him and the conductor of a train, the ticket is necessarily the conclusive evidence of the nature and extent of the passenger's right.   "No other rule," says COOLEY, C. J., in *Hufford* v. *Grand Rapids & Ind. Ry. Co.*, 53 Mich. 118, "can protect the conductor in the performance of his duties or enable him to determine what he may or may not lawfully do in managing the train and collecting fares.   The public is interested in having the

rules whereby conductors are to govern their action certain and definite, so that they may be enforced without confusion and without stoppage of trains, and if the enforcement causes temporary inconvenience to a passenger who, by accident or mistake, is without proper evidence of his right to a passage, though he has paid for it, it is better that he should submit to the temporary inconvenience than that the business of the road be interrupted to the general annoyance of all who are upon the train." See also *Poulin* v. *Canadian Pacific R. Co.*, 52 Fed. R. 197; *New York, etc., Co.* v. *Bennett*, 50 Fed. R. 496; *Townsend* v. *N. Y. Central Co.*, 56 N. Y. 293.

It has been held in many cases that when a passenger receives a wrong ticket from an agent of the company by reason of the mistake or negligence of the agent, the conductor may refuse to accept such ticket and is authorized to compel him to leave the train if payment of the fare is refused. In these cases the passenger should pay the fare demanded and seek his remedy by an action for the breach of the contract, and not by an action of tort for the ejection. *Bradshaw* v. *South Boston R. Co.*, 135 Mass. 407; *Shelton* v. *Lake Shore, &c.*, 29 Ohio St. 214; *Chicago, B. & Q. R. R.* v. *Griffin,* 68 Ill. 499; *Yorton* v. *Milwaukee, &c., Co.*, 54 Wis. 234; *Frederick* v. *M., O. & H. Ry. Co.* 37 Mich. 342; *Mackey* v. *Ohio River R. R. Co.*, 34 W. Va. 65. There are some cases that hold the contrary doctrine, but the weight of authority is against it.

In *McClure* v. *P., W. & B. R. R. Co.*, 34 Md. 532, the plaintiff bought a through ticket on defendant's road from New York to Baltimore, which was taken up by the conductor of a through train upon which plaintiff began the journey and plaintiff received a " check " declared upon its face to be good for this day and train only. The plaintiff got off at a way-station, where he was told by someone in the ticket office that the check would be good on another train and day. Some days afterwards the plaintiff boarded another train at the way-station to complete the journey and

offered the check as evidence of his right to travel.    It was rejected and the plaintiff was put off upon his refusal to pay the fare.    This Court held that under the contract made by the ticket he had no right to stop off and afterwards use the check on another train, and that he was lawfully ejected.

Now, in the case under consideration the contract between the plaintiff and the defendant company, as evidenced by the ticket, was that the plaintiff should be entitled to passage from Glyndon back to Westminster upon the condition precedent that the return coupon be stamped by the person clearly designated upon the face of the ticket.    This condition the plaintiff was unable to comply with for the reasons which have been stated.    But when the plaintiff entered the train to return he offered to the conductor as evidence of his right to travel a ticket which upon its face was not good and effectual for that purpose, because the condition upon which its validity depended had not been performed.    And of this fact the plaintiff had full knowledge.    Upon the refusal of the conductor to accept this defective ticket the plaintiff should have paid the fare demanded and afterwards sought compensation from the company for the breach of its contract.    Since the ticket is the conclusive evidence of the extent of the passenger's right as between him and the conductor, the latter was justified in refusing to accept the defective ticket offered by the plaintiff and in compelling him to leave the train upon his refusal to pay the fare.

The case of *Mosher* v. *St. Louis, &c., Co.*, 127 U. S. 390, is somewhat like the one now under consideration.    There the passenger purchased of the defendant company a ticket expressed on its face to be " good for one first-class passage to Hot Springs, Ark., and return when officially stamped on the back."    The plaintiff was unable to find any agent at Hot Springs to stamp his ticket and was put off of one of the defendant's trains upon the refusal of a conductor to accept the unstamped return coupon.    The defendant was not liable for the absence of an agent at Hot Springs to stamp the ticket, because its liability was limited by contract to its

own road, which did not extend to Hot Springs. In the opinion of JUSTICE GRAY, he says : " The conductor of the defendant's train, upon the plaintiff's presenting a ticket bearing no stamp of the agent at Hot Springs, had no authority to waive any condition of the contract, to dispense with the want of such stamp, to inquire into the previous circumstances, or to permit him to travel on the train. It would be inconsistent alike with the express terms of the contract of the parties and with the proper performance of the duties of the conductor, in examining the tickets of other passengers, and in conducting the train with due regard to speed and safety, that he should undertake to determine, from oral statements of the passengers or other evidence, facts alleged to have taken place before the beginning of the return trip, and as to which the contract, on the face of the ticket made the stamp of the agent of the Hot Springs Railroad Company at Hot Springs the only and conclusive proof."

The case of *P. W. & B. R. R. Co.* v. *Rice*, 64 Md. 63, upon which the appellee relies, is clearly distinguishable from this case. There the ticket presented by the passenger was apparently good. One conductor had through a mistake cancelled it, but attempted to correct the mistake and assured the passenger that it was " all right." Another conductor refused to accept the ticket because the correction had not been made in accordance with the rules of the company. The passenger had no notice or knowledge of the rules and he was authorized under these circumstances to believe that the ticket offered by him was valid. The case of *N. Y.*, *Lake Erie R. R. Co.* v. *Winters*, 143 U. S. 60, is similar in principle to Rice's case.

The difference between these two cases and the case here is that in the former the tickets were apparently good on their face and the passengers had no notice of any defects, while in the case here the ticket on its face was obviously not good, and was notice to the plaintiff that it did not entitle him to passage.

It follows then that there was error in granting the plaintiff's first prayer, which instructed the jury that upon the undisputed facts of the case, the plaintiff was entitled to recover, and also error in rejecting the defendant's prayers which, upon the same facts, denied the plaintiff's right to recover.    There was no question made in this Court as to the measure of damages laid down by the Court below.

For these reasons the judgment will be reversed, without prejudice.

*Judgment reversed with costs.*

(Decided March 26th, 1896).