# CHARLESTON.

MICHAELSON v. CAUTLEY.

Submitted Sept. 20, 1898—Decided Dec. 7, 1898.

1. APPEAL—*Certiorari—Sound Discretion.*

The writ of *certiorari* when awarded in civil cases before justices, under sections 2, 3. chapter 110, Code, is an appellate process, designed to effect the ends of justice ; and the circuit court has a large discretion in awarding the same, reviewing judgments, and granting new trials, thereunder, and unless such discretion is plainly abused, this Court cannot interfere therewith.   (p. 537).

2. NEW TRIAL—*Evidence—Appeal—Error.*

If the evidence presents mixed questions of law and fact, material to the issue involved, about which two reasonable men, learned in the law, might differ as to the proper determination thereof, the circuit court commits no appealable error in awarding a new trial.   (p. 540).

3. NEW TRIAL—*Review on Appeal—Evidence.*

If improper testimony in favor of the prevailing party is admitted by the justice, and it be doubtful whether the same was prejudicial to the opposite party or not, the action of the circuit court in awarding a new trial will not be reviewed by this Court. (p. 542).

Error to Circuit Court, Kanawha County.

Action by O. H. Michaelson against Lucy R. Cautley. Verdict for plaintiff.   From an order granting a new trial, plaintiff brings error.

*Dismissed.*

W. S. LAIDLEY, for plaintiff in error.

BROWN & BROWN, S. L. FLOURNOY, JOSEPH M. BROWN and W. MOLLOHAN, for defendant in error.

DENT, JUDGE:

On a writ of error, the plaintiff complains that the circuit court did not quash the *certiorari* allowed the defendant in the above case to a judgment of a justice founded on the verdict of a jury for three hundred dollars, but reversed the judgment and awarded a new trial. The facts are as follows: The plaintiff rented of the defendant the first story and the basement of a certain building situated on Quarrier street, in Charleston. The upper portion of the building was rented by other tenants, except a certain room, which was vacant. On the night of the 4th of February, 1898, an exposed water pipe in this vacant room burst, and the water ran out, down into the room occupied by plaintiff and damaged his goods to a sum in excess of the three hundred dollars damages demanded. The place to turn off the water from the building was in the basement, rented by plaintiff, and no one could reach it except by his permission. During the middle of the night, when the leakage was discovered, a messenger was sent to plaintiff, who lived some distance away, to inform him and get the key; and the water was then turned off, and due effort made to save plaintiff's goods, consisting of musical instruments, etc.

On the trial of the case before the jury, the justice on motion of the plaintiff, gave the two following instructions, to which defendant objected: "(1) That if the jury believes from the evidence adduced that the plaintiff was a tenant of the defendant, and that in consequence of the defective plumbing or want of repairs, or negligence of the defendant, the plaintiff suffered an injury to his property without any fault of his own, then the plaintiff is entitled to recover damages for the injury sustained in consequence thereof. (2) If the jury find that the defendant is liable to the plaintiff, that the measure of damages for the injury done is that amount that will compensate and make the plaintiff whole,—the difference in value of the property injured between that which was immediately before the injury done, and that afterwards." These instructions appear to properly propound the law, and are simply to the effect that if the damages suffered by the plaintiff were

caused by defective plumbing, owing to the negligence of the defendant, the jury should award such damages as plaintiff had suffered by reason of such negligence. The plumbing is a part of the building, and the landlord is liable to his tenant for defective construction thereof, although there is no covenant to repair. 12 Am. & Eng. Enc. Law, 687; *Stapenhorst* v. *Manufacturing Co.*, 15 Abb. Prac. (N. S. 355). The room in which the leak occured was not rented, but was vacant, and under the control of the landlord. The pipe was exposed, and an inevitable accident happened by reason of the freezing weather. This is an accident that in this climate, in the month of February, can be easily foreseen and provided against, either by proper protection of exposed pipes, or turning off the water supply, and is one that only calls for ordinary care. In such case the landlord is liable, unless he can shift such liability to the tenant by reason of the latter's contributory negligence. If the tenant is fully informed of the defect, and has it in his power to avoid the same by proper precaution on his part, and fails to do so, his negligence, being contributory, will relieve the landlord from liability. Shear & R. Neg. (4th Ed.) s. 722; *Brown* v. *Elliott*, 4 Daly, 329; *Mendel* v. *Fink*, 8 Ill. App. 378; *Kenny* v. *Barnes*, 67 Mich. 336, (34 N. W. 587).

The defendant asked for the following five instructions, which were refused by the justice: "(1) The court instructs the jury that if they believe from the evidence that there was no express contract to the effect that the landlord, Cautley, should keep in repair the house and tenement occupied by her tenant, Michaelson, then they should find for the defendant, Cautley. (2) The court instructs the jury that, if they believe from the evidence that there was no express contract on the part of Cautley to keep in repair the building leased from her by Michaelson, then the jury should find said defendant, Cautley, not liable for any damages which plaintiff, Michaelson, might have suffered from water leaking and running down from apartments in said building above those occupied by Michaelson. (3) The court instructs the jury that if they believe from the evidence that the landlord, Cautley, had not covenanted to repair the building leased by her tenant, Michaelson, and

that Cautley is not chargeable with any affirmative misfeasance, or neglect of positive duty, then the jury should find for the defendant, Cautley. (4) The court further instructs the jury that if they believe from the evidence that the premises leased by the plaintiff from the defendant were not in good repair at the date of the lease, or thereafter, and that by reason of said premises being out of repair the plaintiff was damaged, and that there was no covenant or agreement by the defendant that she should repair said premises, then the jury should find for said defendant, Cautley. (5) The court further instructs the jury that if they believe from the evidence that the plaintiff, Michaelson, was damaged by the water pipe bursting and leaking water in a room in the leased building above those rooms leased by said Michaelson in said building, and that said water pipe which caused said damage was not constructed or used to supply water to that part of said building which was leased by said Michaelson, and that said defendant, Cautley, had not contracted to repair said premises and had not caused said damage by any act of affirmative misfeasence, or neglect of positive duty, on her part, then the jury should find for the defendant, Cautley." These instructions were not proper in this case, for it does not involve the question of repair, but defective construction of the building, owing to the water pipe not being properly protected from the frost in a room in the building not under rent or occupied by any one; hence it was under the control of the landlord. If she had gone up there in the nighttime and flooded the building with a hose to the same extent, her legal liability would have been of the same character, except her conduct would have been more willful. Negligence in looking after the matter herself, or having her agents or tenants to do so for her, was the cause of the leakage. If the room where it occured had been under rent to the plaintiff or other person, the liability might have shifted.

The only remaining question is as to whether the circuit court erred in setting aside the verdict of the jury on the evidence alone. In the case of *Grogan* v. *Railroad Co.*, 39 W. Va. 415, (19 S. E. 563, syl. point 2): "Though evidence is conflicting, the court may set aside the verdict if against

the weight of the evidence, but such power should be exercised cautiously.    When the court does so, its action is regarded with peculiar respect in the appellate court, and will not be reversed, unless plainly wrong."    This is the rule as to trials had in the circuit court.    It should be applied with equal liberality as to trials had before justices, when reviewed by the circuit court, and a new trial has been awarded.    In the case of *Harrow* v. *Railroad Co.*, 38 W. Va. 717, (18 S. E. 926), JUDGE HOLT says: "The statutory writ of *certiorari* is intended as a method whereby the rulings of the justice, etc., may be reviewed,— especially his rulings granting or refusing to set aside verdicts; and the scope and tenor of the act shows plainly that it was intended that the circuit court should be liberal in granting it, so far as it is a substitute for appeal from the judgment of a justice, so that the petitioner may have the judgment of the justice reviewed upon the merits, and such judgment or order made upon the whole matter as law and justice may require."    The statute which provides *certiorari* as an appeal or appellate remedy was enacted for the purpose of, so far as possible, obviating the evil effects of the holding of the Court in the case of *Barlow* v. *Daniels*, 25 W. Va. 512, and *Hickman* v. *Railroad Co.*, 30 W. Va. 296, (4 S. E. 654, and 7 S. E. 455), that a fact tried before a justice's jury of six persons could not be otherwise reexamined than according to the rules of the common law (meaning thereby writ of error), and that a justice's tribunal, not being a court of record, to which such writ lies, the Constitution inhibited the re-examination of jury trials before justices by an appellate court in any manner whatsoever, thus making them a finality.    To sustain the position taken by the Court at that time, it was held that the word "appeals," as used in the clause of the twenty-eighth section of Art. VIII. of the Constitution, in these words, "appeals shall be allowed from judgments of justices in such manner as may be prescribed by law," was used in its technichal sense strictly, and did not include appelate proceedings generally, and that, therefore, the legislature had no authority to grant such "appeals" in cases where a jury trial was involved.    See JUDGE SNYDER's opinion, 25 W. Va. pages 521 to 523 inclusive.    Yet in the case of *Fouse* v. *Van-*

*dervert*, 30 W. Va. 327, (4 S. E. 298), JUDGE SNYDER, again rendering the opinion of the Court, on page 331, 30 W. Va. and page 301, 4 S. E., says: "Is said chapter 110 constitutional? The constitutional provision first above quoted expressly declares that 'appeals shall be allowed from judgments of justices of the peace in such manner as may be prescribed by law.' This provision positively commands that appeals from judgments of justices shall be allowed, and it expressly authorizes the legislature to prescribe the manner in which they shall be allowed. The statute under consideration was enacted a very short time after. said Constitution was adopted, and, as it has prescribed no other effective mode by which judgments of justices of the character now before us can be reviewed, it is the duty of the courts, if they can do so consistently with the legal rules of interpretation, to construe the statute as giving the circuit courts such power of review. The only difficulty in giving such construction is the use of the word 'appeal' in the constitution, instead of common-law terms, 'writ of error' or '*certiorari.*' The term 'appeal' was unknown to the common law.  *  *  *" The able judge then reaches the conclusion (directly contrary to the one in *Barlow* v. *Daniels*) that the word "appeal" means *certiorari*, or any other process the legislature may adopt for the review of judgments of justices. Here there is a direct conflict of the same authority, which cannot be reconciled. How much better would it have been for the Court to have held in the case of *Barlow* v. *Daniels*, that the two provisions of the Constitution under consideration should be construed together, so as to read: "In suits at common law, where the value in controversy exceeds twenty dollars, exclusive of interest and costs, the right of trial by jury, if required by either party, shall be preserved, and in such suits before a justice a jury may consist of six persons. No fact tried by a jury shall be otherwise re-examined in any case than according to the rules of the common law," except "appeals shall be allowed from judgments of justices in such manner as may be prescribed by law." This was undoubtedly the plain meaning and intention of the constitution makers, and, if it had been adhered to, the illegal and inconsistent conclusions of

the court might have been avoided, and the ends of justice better promoted. It never entered the minds of the constitution makers to construe the word "appeals" to mean "writ of error" or "*certiorari*" in this connection; for they well knew that a justice's court was not a court of record, nor the justice usually a man learnea in the law, and they never intended that upon his shoulders should be imposed the laborious task of instructing juries on intricate and difficult points of law, and of making up and signing bills of exceptions embodying his rulings. The jury was reduced to six in number for the very reason that an appeal as a matter of right would furnish an adequate remedy, if they erred, or there was dissatisfaction with their verdict. It is foolishness to talk about the great common-law right. of trial by jury, and yet say that such jury may consist of less than twelve persons, and that six or three or one person may be such jury, if the people so declare. It is like sticking a knife into a man's heart, and at the same time assuring him you do not intend to hurt him. When the people depart from the number twelve, they do away with the common-law right of trial by jury. Not only is this true, but the rules of common-law jury trials have been greatly encroached upon by legislative enactment; so that the Constitution must be considered to read, "No fact tried by a jury shall be otherwise re-examined in any case than according to the rules of the common law" as modified by legislation. Especially is this true when this section is construed in connection with section 21, Art. VIII, to-wit, "Such parts of the common law, and of the laws of this State as are in force when this article goes into operation and are not repugnant thereto, shall be and continue the law of the State until altered or repealed by the legislature." The rules of common law are subject to alteration or repeal by the legislature. Hence the conclusion is inevitable that the meaning of the words used in the Constitution, to-wit, "according to the rules of the common law," were intended to be according to the procedure of common-law courts in contradistinction to equity courts, as modified, prescribed, and fixed by legislative enactment, and that a fact once tried by a jury could not be re-examined or retried except

by another jury, if either party required it, according to such procedure. Questions of law or questions of mixed law and fact may be reviewed by appeal, or in any other manner the legislature may prescribe, as the section can only apply to a fact alone tried by a jury, and re-examination and retrial before another jury according to common-law procedure, as provided and regulated by legislative enactment, fully satisfy the constitutional requirement. This gives the legislature full control, except that facts must be re-examined and retried until finally settled, if either party require, by a jury, leaving questions of law to be determined by the courts. Thus is the great common-law right of trial of facts by a jury of twelve persons impartially selected preserved, untouched either by constitutional or legislative enactment. The right of appeal from the crude rulings of the justice secures it in a court of record presided over by a judge learned in the law. These considerations lead to the conclusion that the legislature, in bestowing on the circuit courts or judges the authority to review the facts as found by a jury of six in a justice's trial, intended to give them a large discretion, so that the "great common-law right of trial by jury" might be preserved, not only in name and form, but in pristine purity, vigor, and substance. The circuit court or judge is not authorized by sections 2, 3, chapter 110, Code, to grant such "appeal" as a matter of right, but as, in his discretion, law and justice may require. If the judgment brought in review is plainly right, law and justice require that it shall be final, that there may be an end to useless litigation. But if there are strong probable grounds to suppose that the merits have not been fairly and fully heard, and that the decision is not agreeable to the justice and truth of the case, it should be retried. If the circuit court on review reaches the conclusion that the matter ought to be retried, and the evidence presents such a case that reasonable men learned in the law, might differ in regard thereto, this Court ought not to interfere until at least there has been a retrial. Otherwise the sacred common-law right of trial by jury, instead of being preserved, is perverted into an instrument of wrong and injustice.

In the present case the justice permitted, as is usual in

such trials, the witness Michaelson to testify, against the objection of the defendant, that he thought "that the pipe had been frozen and bursted during Thursday, the 3d, and that the ice in the pipe prevented the water from flowing, and that the plumber failed to see and repair it, and that afterwards, when the weather moderated, the water dissolved the ice, and flowed out and run down on the goods of the plaintiff ;" "that the loss was occasioned by bad plumbing, or negligence in placing the pipes in the building, as they were, or by the negligence of nonrepair, and overlooking the break, and leaving the same unrepaired ; that it was this negligence that caused the injury to the plaintiff, and that without any fault on his part ;" "that he has suffered loss from the negligence of the defendant and her agents or servants." This is all mere opinion evidence, which was highly improper, and would not have been admitted in a court learned in the law. Other evidence of an expert character was also erroneously introduced and admitted. This would not be allowed to disturb the verdict, if the legal evidence plainly justified it. But, while the evidence tends to show the negligence of the defendant in allowing the water pipe to be exposed in a vacant room entirely under her control, it also tends to show that the plaintiff was aware of her negligence and of the danger of the pipes freezing, and refused, in the daytime, to turn on the water or have anything to do therewith, and that at night, when he closed his store, he had under his control the only means of turning off the water, except the outside street connection, in charge of the waterworks officials ; and without turning off the water, which he had the right to do for his own protection, he left the store, taking the key thereof with him, so that no one else could turn off the water until he could be found and the key obtained, while the defendant, having provided the plaintiff with means of self-protection, so far as the proof shows, · was entirely in ignorance as to whether the water was off or on the night the damage occurred, thus tending to show the plaintiff guilty of contributory negligence ; and instead of permitting this question to be settled by the jury from the admissible facts and circumstances, the plaintiff is permitted to tell them that he was injured by the neg-

ligence of the defendant without any fault on his part, thus allowing him to state a conclusion of law and fact improply, and to the prejudice of the defendant. In the case of *Taylor* v. *Railroad Co.*, 33 W. Va. 39, (10 S. E. 29, syl. point 3), the laws is settled to be "where illegal evidence is admitted against the objection of a party, it will be presumed that it prejudied such party, and if it may have prejudiced, though it be doubtful whether it did or did not, it will be cause for the reversal of the judgment." *Hall* v. *Lyons*, 29 W. Va. 410, (1 S. E. 582); *Kerr* v. *Lunsford*, 31 W. Va. 659, (8 S. E. 493); *Moore* v. *Huntington*, 31 W. Va. 842, (8 S. E. 512); *State* v. *Kinney*, 26 W. Va. 141; *Beach* v. *O'Riley*, 14 W. Va. 55; *State* v. *Musgrave*, 43 W. Va. 673, (28 S. E. 813). As to a case resembling the present one in some particulars, see *Brown* v. *Elliott*, 4 Daly 329.

From these considerations, the conclusion follows that the circuit court did not abuse its appellate powers in setting aside the verdict of the jury and granting the defendant a new trial; and therefore the writ of error granted by this Court is dismissed, as improvidently awarded.

*Dismissed.*