## CHARLESTON.

## LOVINGS v. NORFOLK & W. RY. CO.

### Submitted January 22, 1900—Decided March 31, 1900.

1. STATUTE UNCONSTITUTIONAL—*Jury of Six.*

   Section 169, chapter 50, of the Code of West Virginia, in so far only as it authorizes a jury of six men to try in the circuit court appeals from judgments of justices, is unconstitutional and void. (p. 591).

2. APPEAL—*Trial—Jury of Twelve.*

   On the trial of an appeal, in the circuit court, from the judgment of a justice, where the amount in controversy exceeds twenty dollars, if required by either party, a jury of twelve men shall be selected and impaneled to try the case in like manner as other juries are selected and impaneled in said court. (p. 586).

3. DAMAGES FOR WRONG—*Action—Contract.*

   In an action before a justice "in a civil action for the recovery of money due for damages for a wrong" by a passenger on a railroad train, whose ticket was wrongfully taken up by the conductor, and the passenger was afterwards called on by another conductor of the same train, then in charge, who demanded his ticket, and on his failure to produce a ticket and refusal to pay fare ejected him from the train, *held*, that the plaintiff could recover in said action whatever he showed himself entitled to recover in the action either *ex con tractu* or *ex delicto.* (p. 594).

Error to Circuit Court, McDowell County.

Action by Thomas Lovings against the Norfolk & Western Railway Company. Judgment for plaintiff. Defendant brings error.

*Reversed.*

JOHNSTON & HALE, W. H. STOKES and JAS. I. DORAN, for plaintiff in error.

JAMES A. STROTHER, RUCKER & KELLER and W. L. TAYLOR, for defendant in error.

MCWHORTER, PRESIDENT:

Thomas Lovings purchased from the agent of the Norfolk and Western Railway Company, on the 8th of November, 1897, a ticket for passage from Welch station to Kenova on said road, and boarded passenger train No. 3 on the night of that day, west bound, and took a seat in a coach on that train, and between Welch and Gray station the conductor of the train took up the ticket. At Gray the conductors were changed, and between stations Thacker and Matewan the second conductor called upon Lovings for his ticket, when he presented a slip, which he claimed the first conductor had given him when he took up the ticket, which the conductor refused to accept for passage to Kenova, and demanded his fare, in default of payment of which the conductor ejected him from the train. Lovings brought his action before a justice "for the recovery of money due for a wrong, in which the plaintiff will demand judgment for three hundred dollars." Plaintiff made his oral complaint in effect as stated above, which was entered on the justice's docket. The defendant entered a general denial, and, neither party requiring a jury, the justice, after hearing the evidence, entered judgment for plaintiff for three hundred dollars, and defendant appealed the case to the circuit court. On the 16th of March, 1898, on the calling of the case, both parties announcing their readiness for trial, the defendant, by its counsel, demanded a jury of twelve men to try the case, which was objected to by plaintiff, and the objection sustained, and the motion and demand were overruled and refused, and six jurors impaneled and sworn to try the mat-

ters in difference between the parties, and, having heard the evidence, returned their verdict in favor of the plaintiff for three hundred dollars, and defendant moved to set aside the verdict of the jury, and to arrest the judgment, and grant it a new trial, for the reasons that the verdict was contrary to the law and the evidence in the case; because the court denied the defendant a trial by a legal and constitutional jury of twelve; because the court misdirected the jury by its instructions given for the plaintiff; because it refused to give instructions Nos. 1 and 2 asked by the defendant; because the damages for amount found by the jury were excessive, and that no damage beyond the price of a ticket from Gray to Kenova was shown; because, the plaintiff's action being in tort, on the facts proved the verdict should have been for the defendant,—of which motion the court took time to consider, and on the 13th day of June, 1898, the court overruled the motion, and rendered judgment on the verdict, to which ruling defendant excepted, and filed its bill of exceptions, which was duly signed, sealed, and made a part of the record. Defendant obtained a writ of error to said judgment, assigning as error, among other things, the refusal of the court to impanel a jury of twelve men to try the case, and sustaining plaintiff's objection thereto, and impaneling a jury of six to try the case, over the objection of defendant, and claiming that section 169, chapter 50, of the Code is unconstitutional and void, and is repugnant to and in violation of section 13, Article III, of the Constitution of 1872, as amended. This raises the question directly whether the defendant had a right to trial of this case by twelve men, as evidently contemplated by said section 13, Article III., when it was in the circuit court on appeal. The section referred to provides that "in suits at common law, when the value in controversy exceeds twenty dollars exclusive of interest and costs, the right of trial by jury, if required by either party, shall be preserved." This provision certainly applies to all courts of record having jurisdiction to try the rights of parties. A further provision is added, "and in such suit before a justice a jury may consist of six persons." What constitutes the jury the right of trial by which is so sacredly preserved? It means and can only

·mean the common law jury of "twelve good and lawful men." In 2 Hale, P. C., 161, it is said: "In case of a trial by the petit jury it can be by no more nor less than twelve, and all assenting to the verdict." 1 Chit. Cr. Law, side page 105: "The petit jury, when sworn, must consist pre-·cisely of twelve, and is never to be more or less on the general issue; and this fact it is necessary to insert upon the record." In *Bank* v. *Anderson*, 1 Mo. 244, the provision in the Constitution of Missouri that "the trial by jury shall remain inviolate," was construed to mean that, "with respect to facts, the trial shall be by twelve men, and they shall all and each of them be good and lawful men." A provision in the act organizing the St. Louis law commissioners' court, prescribing that "in all jury trials in said court the jury shall consist of six lawful jurors, or a less number if the parties shall consent thereto," was, in the ·case of *Vaughn* v. *Scade*. 30 Mo. 600, held to be unconstitutional; the court holding that "juries in that court, as in all courts of record, must consist of twelve men." In that case the plaintiff demanded a jury, when the defendant demanded a jury of twelve, which the trial court refused, and impaneled a jury of six, under the statute, *Henning* v. *Railroad Co.*, 35 Mo. 408: "In trials in the cir-·cuit court the parties are entitled to demand a jury of twelve men." *Byrd* v. *State*, 1 How. (Miss.) 177; *State* v. *Cox*, 8 Ark. 436; *Dowling* v. *State*, 5 Smedes & M. 664. The Constitution of 1872 (Article III., § 13) provided that "in suits at common law, when the value in controversy, exclusive of interest and costs, exceeds twenty dollars, the right of trial by jury of twelve men, if required by ·either party, shall be preserved; except that in appeals from the judgments of justices, a jury of less number may be authorized by law; but in trials of civil cases before a justice, no jury shall be allowed;" and section 123, chapter 226, Acts 1872-73, carried this provision for trial of appeal cases into effect. The legislature of 1879 proposed an amendment to said section 13 of Article III. of the Constitution so that it should read: "In suits at common law, when the value in controversy exceeds twenty dollars, exclusive of interest and costs, the right of trial by jury, if required by either party, shall be preserved; and in such

suit before a justice a jury may consist of six persons. No fact tried by a jury shall be otherwise re-examined in any case than according to the rules of the common law." This section, as amended and proposed by the legislature, was adopted by the people at the succeeding election, and it became a part of the constitution. Evidently the legislature in proposing, and the people in adopting, this change had an object and purpose in it, and it clearly accomplished two things: It took from the legislature the power to authorize by law the circuit courts in appeals from the judgments of justices to impanel juries composed of a less number than twelve to try such appeals, and it gave either party the right to demand and have a jury of six in a case before a justice. It will be observed that the section so amended contained a provision for a jury of less number than twelve in the circuit courts to try appeals from justices. This provision is left out of the amended section. The section amended prohibited the use of a jury before a justice, while the same as amended grants the right to either party to require a jury before a justice. In *Barlow* v. *Daniels*, 25 W. Va., at page 517, Judge Snyder, says: "The seventh amendment to the Constitution of the United States, as well as the provisions of our own Constitution now under consideration, declares that 'in all suits at common law, when the value in controversy exceeds twenty dollars, the right of trial by jury shall be preserved.' In what does the right of trial by jury consist? The Constitution furnishes no answer. It is spoken of as something already sufficiently understood, and referred to as a matter already familiar to the public mind. It was unnecessary to define this great right. It there stood as the representative of an idea as certain and definite as any other in the whole range of legal learning. * * * By the common law the number of jurors must be twelve. They must be impartially selected, and must unanimously concur in the verdict. *Work* v. *State*, 2 Ohio St. 296; *State* v. *McClear*, 11 Nev. 39; *Turns* v. *Com.*, 6 Metc. (Mass.) 225; *Norval* v. *Rice*, 2 Wis. 22; *May* v. *Railroad Co.*, 3 Wis. 197." In *Traction Co.* v. *Hof*, 174 U. S. 1, 19 Sup. Ct. 580, 43 L. Ed. 873, it is held that: "Trial by jury in the primary and usual sense of the term at the

common law and in the American constitutions is a trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to instruct them upon the law and to advise them upon the fact, and (except upon acquittal upon a criminal charge) to set aside their verdict if, in his opinion, it is against the law or the evidence.  *  *  * Congress, in the exercise of its general and exclusive power of legislation over the District of Columbia, may provide for the trial of civil causes of moderate amount before a justice of the peace, or in his presence, by a jury of twelve or any less number, allowing to either party, when the value in controversy exceeds twenty dollars, the right to appeal from the judgment of the justice of the peace to a court of record, and to have a trial by jury in that court." It seems very clear that the Supreme Court of the United States does not regard the trial of a case before even a jury of twelve impaneled by a justice of the peace under the act of congress as such "trial by jury" as is guaranteed to the citizens under the Constitution.  It concedes that congress may provide for such trial of a civil case before a justice, or in his presence, by a jury of twelve or any less number, but in any matter involving more than twenty dollars, the right of appeal must be allowed to either party from the judgment of the justice to a court of record, when he may have a trial in said court before a common law or constitutional jury.  It is claimed by appellee that section 28, Article VIII., is conclusive that the jurisdiction of justices in civil cases is alone statutory, and the closing provision in that section that "appeals shall be allowed from judgments of justices of the peace in such manner as may be prescribed by law" is broad enough to comprehend the act providing for a trial of such appeal by a jury of less than twelve, whether of six, four, three, or two.  The provision that appeals shall be allowed in such cases "in such manner as may be prescribed by law" surely does not throw the gate open as wide as that. It is true, the jurisdiction is statutory, but the cause of action is that of a common-law action.  The nature of the claim is not changed because it is brought before a justice. If plaintiff had chosen to bring his action in the circuit court, and laid his damages at fifty-one dollars, the defend-

ant could have demanded "a jury of twelve good and law-
ful men," and an objection by the plaintiff to the impanel-
ing of such a jury would not have been entertained for a
moment.    The last clause of said section 8 simply intended
the legislature to provide the details of such appeal, condi-
tions, bond, etc., to get the case into the circuit court, and
onto its docket, and regulations as to the pleadings, if such
were deemed necessary.    But when it is so clearly ex-
pressed in another part of the constitution as in ours that
when more than twenty dollars in value is involved in con-
troversy in suits at common law "the right of trial by jury,
if required by either party, shall be preserved," the pro-
vision under which it is claimed the lawmaking power acted
should be expressed in language no less clear and unmis-
takable, especially when the effect of such action is to in-
vade an essential right, which for centuries has been the
boast of the Anglo-Saxon race, and which is frequently
referred to by the courts of this country as "the palladium
of our liberties."    In *Thompson* v. *Utah*, 170 U. S. 343, 18
Sup. Ct. 620, 42 L. Ed. 1061, Justice Harlan says at page
349, 170 U. S., page 622, 18 Sup. Ct. and page 1066, 42, L.
Ed.: "When *Magna Charta* declared that no freeman
should be deprived of life, etc., 'but by the judgment of his
peers or by the law of the land,' it referred to a trial by
twelve jurors.    Those who emigrated to this country from
England brought with them this great privilege 'as a birth-
right and inheritance, as a part of that admirable common
law which had fenced around and interposed barriers on
every side against the approaches of arbitrary power.' "
Quoting again from *Traction Co.* v. *Hof*, Mr. Justice Gray
says:  "Lord Hale, in his History of the Common Law
(chapter 12), 'touching trial by jury,' says another excel-
lency of this trial is this: that the judge is always present
at the time of the evidence given in it.    Herein he is able
in matters of law, emerging upon the evidence, to direct
them.    *   *   *   And thus, as the jury assists the judge
in determining the matter of fact, so the judge assists the
jury in determining points of law, and also very much in
investigating and enlightening the matter of fact whereof
the jury are the judges.    It has the advantage of the
judge's observation, attention, and assistance in point of

law by way of decision, and in point of fact by way of direction to the jury." 2 Hale, Com. Law, (5th Ed.) 147, 156. See, also, 1 Hale, P. C. 33. In 5 Bac. Abr. 308, it is said: "The trial *per pais* or by a jury of one's country is justly esteemed one of the principal excellencies of our Constitution; for what greater security can any person have in his life, liberty, or estate than to be sure of not being devested of or injured in any of these without the sense and verdict of twelve honest and impartial men of his neighborhood? And hence we find the common law herein confirmed by *Magna Charta*." That this right, which has been so long valued so highly, should be frittered away by the courts on a strained construction of a section in the fundamental law adopted by the people appears like trifling with serious things. If it had been the intention to give section 28, Article VIII., the effect claimed by appellee, the closing paragraph should have been made to read, "Appeals shall be allowed from judgments of justices of the peace in such manner as may be prescribed by law, and the legislature may provide for the trial thereof by a jury of six men," or any other number named, less than twelve.

Appellee cites *Fletcher* v. *Peck*, 6 Cranch 87, 3 L. Ed. 162, where it is held, "The court will not declare a law to be unconstitutional, unless the opposition between the constitution and the law be clear and plain;" also *Slack* v. *Jacob*, 8 W. Va. 612; *State* v. *Strauder*, *Id.* 686, and other citations to same effect. We freely admit the principle held in these cases, but we are unable to see how it can be applied in case at bar, as the common-law right of trial by jury, if required by either party, is so positively provided for in the constitution that it is impossible that any other number than twelve was meant and intended, and there is nothing in that instrument authorizing a provision for any other number in a court of record. It is claimed also that a strong reason why section 169, chapter 50, of the Code should be held constitutional is the long acquiescence of the legislatures, the courts, and the people in the presumed constitutionality thereof; that this law has been upon the statute books of the State since its birth. Under the Constitutions of 1863 and 1872 there was a special pro-

vision for juries of six in cases appealed from justices. After the adoption in 1880 of the amendment to section 13, Article III., of the last-named Constitution, section 169 was re-enacted, and in re-enacting the same without change to conform to the Constitution as amended, the legislature must have simply overlooked it. Prior to that time the question could hardly have been raised, because it was provided for in the Constitution; and after the people had taken it upon themselves to strike out the provision authorizing the legislature to enact such a measure, it seems that no suitor whose rights were involved had ever chosen to make a demand for a jury of twelve men, and test the question in the courts,---the only way in which it could be tested. The courts acquiesce in all acts of the legislature, whatever may be their repugnance to the Constitution, until the question comes up in a case or proceeding in the court for trial or hearing. It is no part of the duty of courts to examine the acts as they come from the hands of the legislature, and decide which are and which are not in harmony with the Constitution, and the people do not make it their business to inquire into the matter except through the legally constituted channel, the courts. and when the question fairly comes up in the courts it becomes their duty to honestly investigate, and if it is clear that not only the spirit, but the letter, of the Constitution is violated by the act in question, whatever the time that has elapsed since the enactment, the plain duty of the court is so to declare it. It has been well said that "it is better to be right than to be consistent with the errors of a hundred years." When there is doubt only as to the constitutionality of a law, the act should have the benefit of the doubt. *Railway Co.* v. *Miller*, 19 W. Va. 408 (Syl., point 3). "When the text of a constitutional provision is plain and unambiguous, courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument itself" and we must consider, in the matter before us, not only what the section contains as affirmative matter, but what its adoption repealed and struck out. Appellee relies, on the question of long acquiescence in the validity of a law, on the arguments of JUDGES GREEN and SNYDER in *State* v. *Cottrill*, 31 W. Va.

162 (6 S. E. 428), where the constitutionality of section 29, chapter 116, Code, was considered, and on which the court equally divided. These judges give weight to this acquiescence only when there is doubt as to the constitutionality of the act, but they say, "This uniform and unquestioned practice, it is conceded, would not conclude this Court in regard to a statute which was a plain and positive violation to the Constitution."

Appellee contends that the case of *Michaelson* v. *Cautley*, 45 W. Va. 533 (32 S. E. 170), cited by appellant, is not in point. It is true that was a case tried by a jury in justices' court, and taken to the circuit court on *certiorari*, while this was an appeal from the judgment of a justice without a jury; but it makes no differencce whether it was tried before the justice by a jury or by the justice. Judge Dent, in the *Michaelson-Cautley Case*, struggling with the inconsistencies of the Court in former decisions in its efforts to harmonize the statutes with the Constitution, and yet preserve the right of the citizens to "trial by jury," as contemplated by the Constitution, makes this pertinent observation: "How much better would it have been for the Court to have held in the case of *Barlow* v. *Daniels*, 25 W. Va. 512, that the two provisions of the Constitution under consideration should be construed together, so as to read: 'In suits at common law, when the value in controversy exceeds twenty dollars, exclusive of interest and costs, the right of trial by jury, if required by either party, shall be preserved; and in suits before a justice a jury may consist of six persons. No fact tried by a jury shall be otherwise re-examined in any case than according to the rules of the common law,' except 'appeals shall be allowed from judgments of justices in such manner as may be prescribed by law.' This was undoubtedly the plain meaning and intention of the Constitution makers, and, if it had been adhered to, the illegal and inconsistent conclusions of the Court might have been avoided, and the ends of justice better promoted. It never entered the minds of the Constitution makers to construe the word 'appeals' to mean 'writ of error', or '*certiorari*' in this connection; for they well knew that a justice's court was not a court of record, nor the justice usually a man

learned in the law; and they never intended that upon his shoulders should be imposed the laborious task of in-- structing juries on intricate and difficult points of law; and of making up and signing bills of exceptions embodying his rulings. The jury was reduced to six in number for the reason that an appeal as a matter of right would fur- nish an adequate remedy, if they erred, or there was dis- satisfaction with the verdict."

It is assigned as error that the court erred in giving plaintiff's instruction No. 1, and refusing to give defend-- ant's instrucitons Nos. 1 and 2. Plaintiff's instruction No. 1 is as follows: "The court instructs the jury that if they believe, from all the evidence in this case, that the defend- ant, Thomas Lovings, did, on the night of the 8th of No-- vember, 1897, purchase from the agent of the Norfolk and Western Railway Company, at Welch, a second-class ticket from the station of Welch, on the said road, to the station of Kenova, on said road, and paid for the same, and that, after purchasing the said ticket, he took the train No. 3 of said company on that night at Welch, and that while on said train the conductor of said train on the said Norfolk and Western Railway Company took up his. ticket, and that afterwards, between Welch and Kenova, he was wrongfully ejected by a conductor of the said train No. 3, they must find for the plaintiff, although the con-- ductor who ejected him was not the same conductor who took up his ticket." This instruction should not have been given in its present form. It is improper, as there is no evidence tending to prove a wrongful ejectment of plaintiff from the train by the second conductor. Plain- tiff, in his own testimony, says that the conductor, Walters, who was on the train from Welch to Gray, took up his. ticket before they reached Gray; that when the second conductor called for his ticket he had none to produce, and could not pay his fare. It was the plain duty of the con- ductor, under the rules of the company, to eject him, using no more force than was necessary, which he did by stop-- ping the train, and simply telling him to get off, and he got off. There is no pretense that he put him off by force. *McKay* v. *Railroad Co.*, 34 W. Va. 65 (11 S.E. 737), 9 L. R. A. 132 (Syl., point 1): "A railroad conductor may demand a.

ticket as evidence of a passenger's right of passage, or, on failure of the passenger to produce it, may demand payment of fare, and, on failure to pay it, may lawfully eject the passenger from the train, using no more force than necessary." In that case the passenger had purchased a ticket from an agent for a certain trip, and by mistake of the agent was given a ticket in an opposite direction, and it was held that the action had to be based upon the breach of the contract to convey the passenger. This case was also approved in *Trice* v. *Railway Co.*, 40 W. Va. 271 (21 S. E. 1022). *Shelton* v. *Railway Co.*, 29 Ohio St. 214, is to the same effect, and was just such a case as that at bar, where a passenger had purchased a ticket which was afterwards wrongfully taken up by one of defendant's conductors, and plaintiff was not thereby relieved from the duty of providing himself with a ticket or paying fare on another train of defendant in which he was a passenger; and it was then held that the right of action of the passenger would be for wrongful taking up of the ticket, and not for having been removed from a train by another conductor for refusing to pay fare. *Railroad Co.* v. *Griffin*, 68 Ill. 499; *Hall* v. *Railroad Co.*, (C. C.) 9 Fed. 585; *Townsend* v. *Railroad Co.*, 56 N. Y. 295; *Hibbard* v. *Railroad Co.*, 15 N. Y. 455; *Yorton* v *Railway Co.*, 54 Wis. 234, 11 N. W. 482; *McClure* v. *Railroad Co.*, 34 Md. 532; *Weaver* v. *Railroad Co.*, 3 Thomp. & C. 270; *Crawford* v. *Railroad Co.* 26 Ohio St. 580; *Marshall* v. *Railway Co.*, 78 Mo. 610; *Bradshaw* v. *Railroad Co.*, 135 Mass. 407; *Hufford* v. *Railway Co.*, 53 Mich. 118, 18 N. W. 580; *Railroad Co.* v. *Bills*, 118 Ind. 221 (20 N. E. 775); *Railroad Co.* v. *Gants*, 38 Kan. 618, 17 Pac. 54; *Railroad Co.* v. *Stocksdale*, 83 Md. 245, 34 Atl. 880.

Defendant's instruction No. 1 offered, to which plaintiff objected, and the objection was sustained, and instruction refused, was to the effect that, although the jury may believe from the evidence the fact of the purchase of the ticket, and the taking up of the same by Walters, the first conductor, before they reached Gray station, and giving plaintiff a conductor's tag or slip of paper, and that between Gray and Kenova stations the second conductor, Fink, demanded of plaintiff a ticket, which he failed to produce, because he

averred that Conductor Walters had taken it up, and that plaintiff refused to pay his fare from Gray to Kenova, and by reason of which Conductor Fink, without unnecessary force or violence, ejected him from the train, then the plaintiff cannot recover in this case, and the jury should find for the defendant company. And the second instruction was to the effect that if they shall believe, from the evidence, the purchase of the ticket, that plaintiff took passage on the train; that Conductor Walters took from the plaintiff the ticket; that at Gray the crew was changed, another conductor took charge of the train, and called upon plaintiff for his ticket, and he failed to produce it, and refused to pay his fare, and was ejected from the train without unnecessary force, then the plaintiff cannot recover in this case. This is an action brought before a justice of the peace, and, as held in *O'Connor* v. *Dils*, 43 W. Va. 54 {26 S.E. 354) (Syl., point 1), "common-law forms of actions, in so far as justice's trials are concerned, are entirely abolished by section 49, chapter 50, Code"; and syllabus, point 2, holds "the words 'damages for a wrong' are, in substance, according to their legal definition, equivalent to the words, 'money due on contract,' the former phrase being broader than and including the latter according to ordinary legal phraseology and meaning." The defendants' instructions were asked on the theory that plaintiff's action was founded alone upon the tort, the wrongful ejectment. They were properly rejected. For the reasons herein set out, the judgment is reversed, and the case remanded for a new trial.

*Reversed.*